Dorothy Hoffman, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Crime Victim's Compensation Board, Respondent.

Argued May 11, 1979, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*Paul J. Leventon,* with him *William R. Ellis,* and *Leventon & Leventon,* P.C., for appellant.

*Sally A. Lied,* Deputy Attorney General, with her *J. Andrew Smyser,* Deputy Attorney General, and *Gerald Gornish,* Acting Attorney General, for appellee.

OPINION BY JUDGE MENCER, September 17, 1979:

At approximately 4 p.m. on January 18, 1977, David Hoffman, husband of Dorothy Hoffman, sustained a gunshot wound of his chest during a robbery at his place of business and died shortly thereafter of injuries caused by the shooting.

On January 10, 1978, Dorothy Hoffman (claimant) filed a death claim with the Crime Victim's Compensation Board (Board). On April 5, 1978, the Board denied compensation relative to the widow's claim, and the claimant appealed to this Court.

The resolution of this appeal requires an interpretation of Section 477.9(e) of the Act of April 9, 1929, P.L. 177, *as amended,* added by Section 2 of the Act of July 9, 1976, P.L. 574 (Act), 71 P.S. §180-7.9, which reads, in pertinent part, as follows:

> (e) Any award made pursuant to this act shall be reduced by the amount of any payments received or to be received by the claimant as a result of the injury . . . (iii) under any contract of insurance wherein the claimant is the insured beneficiary. . . .

It is agreed, and the Board so found, that, as a result of the murder of her husband, the claimant suffered a total economic loss of $66,548.82.[1]  As a result of her husband's death, the claimant received the sum of $85,808.03 as beneficiary of life insurance policies written on the life of her husband.  Because the payments received by the claimant as the beneficiary under life insurance policies exceeded the economic loss sustained by the claimant, the Board concluded that it could not make an award to this claimant.

The claimant contends that the Act only requires a reduction of the total loss sustained by payments received under any contract or policy of insurance wherein she is both the insured and the beneficiary. This argument is predicated on the assertion that the words "insured beneficiary," as used in Section 477.9 (e)(iii) of the Act, means one who is not only the person insured against a certain loss, but is also the beneficiary of the proceeds of the particular policy of insurance.

Since the person who is insured under a life insurance policy is never personally the beneficiary of the policy, the acceptance of the claimant's contention would remove life insurance proceeds as an item of reduction from the award authorized by the Act. Our reading of the Act indicates to us that the crime victim's compensation program was intended by the Legislature to compensate innocent victims of crime for economic losses sustained by them for which they receive no other compensation.  Within limitations set forth in the Act, the program makes up the difference

---

[1] Total economic loss in the instant case was arrived at by adding the claimant's loss of support resulting from the death of her husband to her out-of-pocket expenses due to his death. The claimant concedes that the $3,570 she will receive from Social Security benefits during the minority of her son should be subtracted from her total economic loss figure to arrive at her actual economic loss.

between what the victim lost economically and what a victim received economically as a result of a crime. We are convinced that, had the Legislature intended that widow claimants recover for loss of earnings or support, even though they would have available to them proceeds of life insurance policies, it would never have included Section 477.9(e) in the Act.

Admittedly, the combination of the words "insured beneficiary" is susceptible to more than one interpretation. As we have noted, the claimant urges us to adopt an interpretation which would treat both words as nouns, with the resulting consequence that only when a claimant was both the insured and beneficiary under an insurance policy would the proceeds paid under such a policy be a reduction of any award.

However, our reading of the words in dispute leads us to conclude that the word "insured," as used in Section 477.9(e)(iii), is an adjective modifying "beneficiary" and that the Legislature did not intend it to be a noun such as would be the case if the conjunctive "and" had been inserted between "insured" and "beneficiary."

In summary, our study of the statute and the facts of this case compels us to the conclusion that the Legislature intended by its inclusion of Section 477.9(e)(iii) in the Act that a claimant who receives proceeds under any contract of insurance as the result of a victim's injuries or death, whether the claimant is the insured or a beneficiary, should have his or her award reduced by the amount of such insurance proceeds.[2] This interpretation is compatible with the legislative

---

[2] The claimant would refute this conclusion by referring to remarks made by Representative Irvis on the floor of the house when he submitted an amendment to Senate Bill No. 153, which added subsection (iii) to Section 477.9(e) of the Act. According to the Legislative Journal of the Commonwealth of Pennsylvania dated May 11, 1976, Mr. Irvis made the following statement:

60

to September 16, 1976,[1] the date claimant notified his employer of the injury. The Workmen's Compensation Appeal Board affirmed the referee's determination and this appeal followed. We reverse.

Section 311 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended* (Act), 77 P.S. §631, provides, in pertinent part:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall

---

[1] All medical expenses, the subject of this litigation, were incurred by claimant between September 3, 1976 and September 16, 1976. Claimant contends that these expenses, being incurred within 21 days of his giving notice of his injury, are compensable and must be paid by the employer, since the claimant did not suffer such an effect from the injury as required him to seek medical attention or lose time from work prior to September 3, 1976. Judge WILKINSON, JR., writing for this Court in *Workmen's Compensation Appeal Board v. Paris Neckwear Co.*, 22 Pa. Commonwealth Ct. 543, 546, 350 A.2d 212, 214 (1976), aptly answered the argument advanced by claimant here:

> The time for giving notice does not begin to run until the claimant knows, or should know, of the injury and its relation to his employment only in cases of injury resulting from causes in which the nature of the injury or its relation to employment is not known to the employee. The Act specifically gives an example of such an injury, radiation.
>
> In the instant case, the claimant immediately knew she was injured and knew the nature of her injury, a back injury. Section 312 of the Act, 77 P.S. §632, explains the type of notice contemplated by the law:
>
> '[N]otice . . . sufficient to inform the employer that a certain employe, by name, received an injury, the character of which is described in ordinary language, in the course of his employment on or about a time specified and at or near a place specified.'
>
> Claimant could and should have informed her employer that she suffered a back injury while engaged as a splitter in his plant. . . .

give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given. . . .

In *Workmen's Compensation Appeal Board v. Del-Cimmuto,* 23 Pa. Commonwealth Ct. 43, 350 A.2d 459 (1976), we held that the word "compensation", as employed in various sections of the Act, includes medical services.[2]

Here, the referee found that the claimant was in-. jured on July 7, 1976 and did not give the employer notice of the injury until September 16, 1976, a date more than 21 days after the injury. These findings are not contested by the claimant and are amply supported by the evidence of record. Section 311 of the Act mandates[3] that, absent the giving of the required notice within 21 days after the injury, no compensation shall be due until such notice is given, and therefore, under the facts of the instant case; no compensation, including payment for medical expenses, was due and owing to the claimant until September 16, 1976.

Accordingly, we make the following

## Order

And Now, this 14th day of September, 1979, the order of the Workmen's Compensation Appeal Board,

---

[2] Section 306(f) c.d. of the Act, 77 P.S. §531(1), provides, in part, as follows.

The following schedule of *compensation* is hereby established:

. . . .

(f) The employer shall provide payment for reasonable surgical and medical services. . . . (Emphasis added.)

[3] The time limit prescribed in Section 311 of the Act is mandatory and, unless there is fraud or its equivalent present or some other act on the part of the employer which prejudices the claimant, the courts have no authority to extend the time for giving the required notice. *Canterna v. United States Steel Corp.,* 12 Pa. Commonwealth Ct. 579, 317 A.2d 355 (1974).

the jockey's work was accomplished was in the jockey, and not in the owner of the horse, and that the jockey was therefore an independent contractor. *Davidson v. Workmen's Compensation Appeal Board,* 42 Pa. Commonwealth Ct. 30, 399 A.2d 1193 (1979).

We believe that *Davidson, supra,* controls here and we therefore affirm the disallowance of benefits.

The order of the Board is affirmed.

### ORDER

AND Now, this 14th day of September, 1979, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.