512 A.2d 734

Edna F. Fortson, Petitioner *v.* Commonwealth of Pennsylvania, Crime Victim's Compensation Board, Respondent.

Argued September 12, 1985, before Judges CRAIG and MACPHAIL, and Senior Judge BLATT, sitting as a panel of three. Reargued May 14, 1986, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Carolyn L. Gaines,* for petitioner.

*Amy Zapp,* Deputy Attorney General, with her, *Allen C. Warshaw,* Chief Deputy Attorney General, Chief Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, June 19, 1986:

Edna Fortson appeals an order of the Crime Victim's Compensation Board which denied her claim for benefits based on its conclusion that Fortson was ineligible to receive compensation for her husband's homicide because the total amount payable to her from other sources as a result of the crime offset and exceeded the award for out-of-pocket expenses and loss of support for which she otherwise would have been eligible under section 477 of The Administrative Code of 1929, known as the Crime Victim's Compensation Act.[1]

We must determine whether the board erred in computing the claimant's loss of support by (1) failing to consider factors which might have had an impact on the victim's future earning capacity, and (2) improperly offsetting the survivor's benefits of the victim's pension against the potential award.

At the time of his death on November 13, 1982, the claimant's husband, Roy Fortson, was thirty-five years old and worked for the City of Philadelphia as a deputy sheriff. In support of her claim for out-of-pocket expenses and loss of support, the claimant submitted various documents which formed the basis for the board's conclusion that the claimant had incurred the following losses:

| | |
|---|---:|
| Out-of-pocket expenses | $ 8,875.39 |
| Loss of support | 289,853.36 |
| Total | $298,728.75 |

---

[1] Section 477 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* added by section 2 of the Act of July 9, 1976, P.L. 574, *as amended,* 71 P.S. §§180-7 through 180-7.18.

The out-of-pocket expenses included the cost of medical care rendered to the victim as a result of the crime, and funeral expenses.

*Projection of Loss of Support*

The board calculated the loss of support in accordance with a detailed formula contained in a regulation set forth at 37 Pa. Code §191.9b(a), which provides, in part:

(i) Determine the net annual income of the victim by subtracting social security tax, Federal income tax, State income tax, and local wage taxes from the gross earnings for the 12 months immediately preceding the occurrence of the crime.

. . . .

(iii) Attribute 80% of the net adjusted profit as support to the surviving dependent.

(iv) Determine the average number of remaining years of labor force participation by the victim by use of the publication *Penna. Damages—Personal Injury Verdicts,* Troutman.

(v) Determine the average number of remaining years of life for the claimant by use of the publication *Penna. Damages—Personal Injury Verdicts,* Troutman.

(vi) Multiply the net annual loss of support by the average number of remaining years of labor force participation by the victim.

(vii) Multiply the net annual loss of support by the average number of remaining years of life of the claimant.

(viii) The total loss of support will be whichever figure is the lower.

The claimant contends that the board improperly calculated her loss of support by not including the effect of inflation and possible salary increases on the victim's

future earnings. However, the claimant did not offer any such evidence to the board for it to consider in its calculation of loss of support. The fact that the claimant was not represented by counsel did not relieve her of the burden of proving both eligibility and the amount of compensation to which she was entitled. *Milbourne v. Pennsylvania Crime Victim's Compensation Board*, 82 Pa. Commonwealth Ct. 259, 475 A.2d 899 (1984).

Further evidence on this point would not be appropriate because any evidence which the claimant could introduce with regard to inflation, and as to the likelihood of the victim's salary increases, would be purely speculative and outside the scope of compensation for "actual losses" under the Code.[2]

The claimant argues that the principle of common law tort damages announced in *Kaczkowski v. Bolubasz*, 491 Pa. 561, 421 A.2d 1027 (1980), which includes consideration of future salary increases, is applicable here to the statutory calculation of loss of support. However, in response to a similar argument in *Gloeckl v. Pennsylvania Crime Victim's Compensation Board*, 57 Pa. Commonwealth Ct. 28, 425 A.2d 877 (1981), this court emphasized that the purpose of the crime victim's compensation program is not to be a substitute for a tort action, but to compensate innocent victims of crime for economic losses sustained by them for which they normally would receive no compensation. *Hoffman v. Pennsylvania Crime Victim's Compensation Board*, 46 Pa. Commonwealth Ct. 54, 405 A.2d 1110 (1979). Consequently, the statutory formulation of compensation, which excludes traditional measures of tort damages, "evidenced an intent by the legislature to set up a

---

[2] Section 477.9(c) of the Administrative Code provides that "[a]ny award made for loss of earnings or support shall . . . be in an amount equal to the actual loss sustained."

scheme of compensation unrelated to the law of civil damages." *Gloeckl,* 57 Pa. Commonwealth Ct. at 32, 425 A.2d at 878.

The board regulation explicitly sets forth the method for calculating loss of support, and does not include consideration of future contingencies.[3] Moreover, in *Gloeckl,* this court rejected the claimant's argument that the calculation of loss of support should include a projection of the victim's earning capacity in terms of career advancement. The board's computation of loss of support was correct.

### Reduction of Award by Pension Amount

Section 477.9 of the Code, 71 P.S. §180-7.9, requires the board to reduce the potential award by amounts payable to the claimant from other sources as a result of the crime. Based upon documents submitted by the claimant, the board concluded that she had received, or would receive, the following offsetting payments:

| | |
|---|---:|
| Life insurance and social security | $ 49,934.72 |
| Medical insurance | 5,240.39 |
| Husband's pension with City of Philadelphia (survivor payments) | 350,894.74 |
| Social security (payable to victim's minor son) | 38,136.00 |
| Total | $444,205.85 |

Because that total exceeds the claimant's out-of-pocket expenses and loss of support, the board denied her claim upon the authority of section 477.9(e) of the Code, 71 P.S. §180-7.9(e), which provides in part:

[A]ny award made pursuant to this act shall be reduced by the amount of any payments re-

---

[3] Therefore, the claimant's additional contention, that her loss of support should include the amount she would have received had her husband lived to retirement age, must also fail.

ceived or to be received as a result of the injury (i) from or on behalf of the person who committed the crime, (ii) under any insurance programs including those mandated by law, (iii) under any contract of insurance wherein the claimant is the insured beneficiary, (iv) *from public funds,* or (v) as an emergency award pursuant to section 477.8 of this act. (Emphasis added.)

The board's use of the insurance and social security proceeds as offsetting amounts, under item (ii) of the quoted section, is not in dispute.

However, the claimant argues that the board erred in offsetting the potential award for loss of support by amounts that she would receive from her husband's pension plan with the City of Philadelphia. The board treated the pension payments as being from "public funds" under item (iv) above.

Accordingly, this court's decision in *McKnight v. Pennsylvania Crime Victim's Compensation Board,* 76 Pa. Commonwealth Ct. 274, 463 A.2d 1238 (1983) is not germane because that case involved an offset against the award by the amount of social security survivor benefits under the insurance offset provision, item (ii) in the above quoted section 477.9(e), rather than under item (iv), the public funds offset.

Accordingly, this case presents a question of first impression, as to which this court's conclusion is that the "public funds" offset in the statute may not be construed to include pension receipts of a public employee because the true nature of such payments is not that of a grant from the public treasury but instead constitutes deferred compensation which should not be treated differently from a pension received from a private employer. In *Commonwealth ex rel. Zimmerman v. Officers and Employees Retirement Board,* 503 Pa. 219, 469 A.2d 141 (1983), the Pennsylvania Supreme Court reiterated:

In Pennsylvania we have rejected the view that pension benefits are mere gratuities or expectancies subject to the whim of the munificent governmental employer. To the contrary, it is the well settled law of this jurisdiction that the nature of retirement provisions for public employees is that of deferred compensation for services actually rendered in the past [citations omitted].

503 Pa. at 222, 469 A.2d at 142.

The fact that pension proceeds are deferred compensation should not obscure the valid point that the public employee has earned them by his performance of services in his job. Even though the regular salary or wages of a public employee initially comes from public funds, once the employee has received his paycheck in return for his labor, these funds are wholly his and no longer belong to the public. By the same token, once an employee's entitlement to deferred compensation under a pension plan has vested in the employee—as was undoubtedly the case here—then the character of those funds as public monies has ended, and they belong to the employee as his property just as surely as his paycheck does. *See Commonwealth ex rel. Zimmerman v. Officers and Employees Retirement Board,* 501 Pa. 293, 461 A.2d 593 (1983).

Neither counsel nor the law give us any indication that the board charges future pension receipts from a private employer against a crime victim compensation award, either as an offset or in the computation of loss of support. The board's regulations make reference to pension receipts only in 37 Pa. Code §191.9b(e), which appears to refer only to past or current pension income as a measure of the amount of future support lost.

Therefore, in accordance with the fundamental rule of construction that statutes should be interpreted to

avoid unconstitutional impact, 1 Pa. C. S. §1922, this court must interpret this statute as not treating the deferred compensation payments of a public employee differently from such pension or deferred compensation payments in a private employment context. If the statute, for the purpose of imposing offsets against crime victim compensation awards, were read to classify a public employee's pension entitlement differently from that of a private organization's employee, such a classification clearly would have no rational relationship to the law's purpose, and hence would contravene the principle of equal protection of laws under the rational basis test. Certainly law enforcement personnel, normally employees of public agencies, being specially exposed to injury and death as a result of criminal activity, are entitled to be treated on a basis at least equal to that afforded to persons in private employment.[4]

Accordingly, the pension amount of $350,894.74 should be removed from the $444,205.85 total of offsets imposed, leaving a correct offset of $93,311.11 against the gross award of $298,728.75. A net calculated amount of $205,417.64 supports an award at the statutory maximum of $20,000 for loss of support, Administrative Code §477.9(c), which, together with the out-of-pocket expenses approved by the board, would amount to a total award of $28,875.39, which is under the statutory ceiling of $35,000, Administrative Code §477.9(b).

---

[4] Of peripheral interest is the fact that many public pension payments are drawn from funds which consist in part of contributions made by the employees rather than by the public employer. Although the record in this case is inconclusive on that particular matter, the excerpt of the Philadelphia pension ordinance supplied by the board refers at one juncture to the "City's share," an indication that employee contributions to the fund may be involved.

ORDER

Now, June 19, 1986, the order of the Crime Victim's Compensation Board, at No. 83-0522-D, dated November 7, 1984, is reversed and this case is remanded to the board for recomputation and issuance of an award in accordance with the foregoing opinion.

Jurisdiction relinquished.

CONCURRING AND DISSENTING OPINION BY JUDGE MACPHAIL:

I join in the majority opinion in every respect except that part thereof which holds that the Board erred when it offset the claimant's losses by the amount of the pension she will receive from the City of Philadelphia.

As noted in the majority opinion, Section 477.9(e) of the Code, 71 P.S. §180-7.9(e) provides that the amount of the award shall be reduced by the amount of any payments received or to be received from public funds. The Board concluded that the pension fell within that provision. There is nothing in the record, however, to indicate whether any part of the decedent's pension was contributed from his own funds. It would appear to me, therefore, that a remand would be necessary to have the Board determine to what extent the pension is made up of public funds.

I must respectfully disagree with the majority's reasoning that since the pension is vested and constitutes deferred compensation, the character of the funds as public monies has changed. The language of the statute is very clear that if the *source* of the payments received as a result of injury or death is from public funds, the award *must* be reduced by that amount.

The majority holds that any interpretation other than theirs will place Section 477.9(e) in constitutional

jeopardy for the reason that treating a public pension different from a private pension would constitute a contravention of equal protection of the laws. I would hold that the legislative intent to preserve the public fisc by excluding from the award, which is primarily financed from the public treasury, payments the claimant will receive from other public funds, is a legitimate governmental end which is not in violation of the equal protection provisions of the constitutions of this Commonwealth or the United States.