**LICENSED BEVERAGE ASSOCIATION OF PHILADELPHIA and FJB Enterprises, Inc. and H & J McNally's Tavern, Inc. and George Minnich and Paul Cavanaugh and Joanne Niedosik and Joyce DiPasquale, Appellants,**

v.

**BOARD OF EDUCATION OF the SCHOOL DISTRICT OF PHILADELPHIA and City of Philadelphia Law Department.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 1995.

Decided Dec. 22, 1995.

448

Joseph N. Bongiovanni, III, for appellants.

Richard Feder, Deputy City Solicitor, for appellees.

Before COLINS, P.J., and DOYLE, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

PELLEGRINI, Judge.

The Licensed Beverage Association of Philadelphia, FJB Enterprises, Inc., H & J McNally's Tavern, Inc., George Minnich, Paul Cavanaugh, Joanne Niedosik and Joyce DiPasquale (collectively, Association) appeal the order of the Court of Common Pleas of Philadelphia County (trial court) denying their request for an injunction against the imposition of a so-called "liquor-by-the-drink" tax by the City of Philadelphia and the Board of Education of the School District of Philadelphia (collectively, City).

The Licensed Beverage Association of Philadelphia is an incorporated association of tavern owners in the City. FJB Enterprises and H & J McNally's are owners of taverns in the City. Minnich, Cavanaugh, Niedosik and DiPasquale are City residents and taxpayers. In addition, Niedosik and DiPasquale are employees of a tavern within the City.

Effective January 1, 1995, the City Council of Philadelphia authorized the Board of Education to impose a one-percent tax for school district purposes on the sale at retail of liquor and malt and brewed beverages (Ordinance).[1] The tax is known as the liquor-by-the-drink tax or the across-the-bar tax. The Association filed a complaint in equity in the trial court objecting to the sales tax and alleging that the tavern owners will be hurt by lower sales due to the higher taxes and by the resulting competitive advantage to taverns outside of the City. The Association filed a motion for a temporary restraining order to prevent the City from imposing and collecting the tax.

■ Before the trial court, the parties stipulated that the motion for temporary restraining order be considered a permanent injunction request and that a final order be entered. Thereafter, the trial court denied the request for injunctive relief because the City's Ordinance was authorized by Section 4 of the First Class School District Liquor Sales Tax Act of 1971 (enabling Act), Act of June 10, 1971, P.L. 154, 53 P.S. § 16134, which has not been repealed.[2] The Association then filed this appeal contending that the enabling Act is not legal authorization for the present imposition of the tax, either because it was given for a limited period due to a financial emergency and, as such, has lapsed in the intervening 23 years, or because it has been repealed by implication due to subsequent grants of taxing authority to the City.[3]

■ As to its argument that the authorization is no longer effective, the Association argues that the full title of the enabling Act [4]

1. Section 19–1805(2) of the Philadelphia Code, approved June 27, 1994, provides:

   The Board of Education of the School District of Philadelphia is authorized to impose a tax for general public school purposes upon sales at retail in the District of liquor and malt and brewed beverages which are sold or dispensed during Tax Year 1994, or any part thereof, and for each tax year thereafter, by any hotel, restaurant, or club or other person licensed by the Commonwealth of Pennsylvania to sell or dispense liquor or malt or brewed beverages.

2. Section 4 of the enabling Act provides:

   Any council of any city of the first class coterminous with a school district of the first class may authorize the board of education of such school district of the first class to levy a tax imposed upon each separate sale at retail as

defined herein within the school district of the first class of ten per cent of the sale price, which tax shall be collected by the vendor from the purchaser, and shall be paid over by the vendor to the Tax Collector as herein provided.

3. Our scope of review in cases involving a permanent injunction is limited to whether the trial court abused its discretion or committed an error of law. *Sisco v. Luppert*, 658 A.2d 886 (Pa. Cmwlth.1995).

4. The title of the enabling Act states:

   An act authorizing the imposition of a tax on the sale at retail of liquor and malt and brewed beverages within the school districts of the first class coterminous with a city of the first class for public school purposes; providing for its

and the debate and discussions of the legislators before it was enacted[5] establish that the taxing authorization was conferred for a limited period of time and was intended only to resolve an imminent financial crisis in the School District. Even though the language in the title states that the power is conferred for a limited period of time, there is no such language in the statute. The title of a statute may be considered in the construction of the statute only where the plain words of the statute are ambiguous, and, even in those cases, is not conclusive. Section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924; *Commonwealth v. Magwood*, 503 Pa. 169, 469 A.2d 115 (1983). Because the plain language of the statute is not ambiguous, in that it provides no indication of a time limitation on the taxing authorization granted,[6] the title of the enabling Act cannot be considered. Even if statements by the legislators could be considered legislative history, it is irrelevant because the language of the statute is clear. *In re Martin's Estate; Golebieski v. Public School Employees Retirement Board*, 161 Pa.Cmwlth. 127, 636 A.2d 268 (1993), *petition for allowance of appeal denied*, 537 Pa. 635, 642 A.2d 488 (1994).[7] Moreover, the Association provides no support or explanation for its argument that the enabling Act "lapsed" by the City's failure to rely on it for 23 years. The opposite principle is established in the Statutory Construction Act, which provides that "[a] statute shall not be deemed repealed by failure to use such statute". 1 Pa.C.S. § 1973.

█ The Association also argues that the enabling Act is ineffective because it has been repealed by implication in subsequent grants of taxing power to the City. To support this contention, the Association lists increases in the Pennsylvania Liquor Control Board fees, decreases in the discount afforded retail licensees in the purchase of liquor, malt and brewed beverages from wholesale outlets, and the 18% state tax imposed on retailers' purchases from the Pennsylvania Liquor Control Board as statutes that have implicitly acted to revoke the authority of the enabling Act.[8]

█ When a statute sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statutes upon the same subject, the former statute is impliedly repealed. *Fedor v. Borough of Dormont*, 487 Pa. 249, 409 A.2d 334 (1979); *see also* 1 Pa.C.S. § 1971(a). In *Fedor*, the Borough enacted a new ordinance that was a comprehensive pension plan, including a provision to transfer all of the assets of the existing fund into a new trust, and stated in the preamble that its intent was to "restate

---

levy and collection; conferring and *for a limited period of time* imposing powers and duties, and providing penalties. (Emphasis added).

5. Although the Association calls these debates by the legislators the "legislative history" of the enabling Act, the only legally cognizant legislative history are reports of legislative committees and prior enactments and amendments of the statute. *See In re Martin's Estate*, 365 Pa. 280, 74 A.2d 120 (1950); *Hoffman v. Commonwealth, Pennsylvania Crime Victim's Compensation Board*, 46 Pa.Cmwlth. 54, 405 A.2d 1110 (1979).

6. When a tax is enacted because of temporary conditions, when the temporary condition ends is when the General Assembly rescinds the tax.

7. The Statutory Construction Act states that "[a] statute shall not be deemed repealed because the reason for its passage no longer exists." 1 Pa. C.S. § 1972. Under this principle, even if the enabling Act was enacted only to address a financial crisis in the School District in 1970, even though the financial crisis had passed, that fact would not effect a repeal of the statute.

8. The Association also specifically referred to the grant of an additional 1% retail tax imposed for the benefit of the City under the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class (PICA Act), Act of June 5, 1991, P.L. 9, 53 P.S. §§ 12720.101—12720.709. However, this retail sale tax does not apply to liquor, malt or brewed beverages. The 1% PICA tax can only be imposed on tangible personal property or services taxable under Article II of the Tax Reform Code of 1971. Section 503(a) of the PICA Act, 53 P.S. § 12720.503(a). The relevant section of the Tax Reform Code of 1971 specifically excludes the sale of liquor, malt or brewed beverages at retail. Section 201(k)(10) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7201(k)(10). Because it does not apply to retail liquor sales, the PICA Act could not repeal by implication the enabling Act which deals only with a liquor-by-the-drink tax for the benefit of the School District.

in its entirety" the prior pension plan. Under those circumstances, the Supreme Court held that the new ordinance covered the entire subject matter of the former ordinance and was intended as a substitute and, therefore, repealed the prior ordinance.

The statutes affecting retail liquor establishments referred to by the Association,[9] including licensing fees, discounts for purchases from wholesalers, and the state tax on purchases from wholesalers, neither cover the subject matter of the enabling Act, a tax on liquor-by-the-drink, nor reveal any intention of replacing the enabling Act. Because none of these statutes meet the requirements for repealer by implication, and there was no express repealer, the enabling Act was in effect and legal authorization for the City's Ordinance.

■ The Association also contends that the Ordinance is invalid under the judicial doctrine of preemption. The doctrine of preemption is applicable to determine if municipal legislation is improper based on whether state legislation, which in regulating some industry or occupation is silent as to whether municipalities are permitted to enact legislation in the field entered by the state, by analyzing the provisions of the legislation to ascertain the probable intention of the legislature. *City of Pittsburgh v. Allegheny Valley Bank*, 488 Pa. 544, 549, 412 A.2d 1366, 1368–69 (1980); *Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 380–81, 77 A.2d 616, 619–20 (1951). "[I]f the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid." *Id.* at 318, 77 A.2d at 620 (citations omitted).

In *Commonwealth v. Wilsbach*, 513 Pa. 215, 519 A.2d 397 (1986) (plurality opinion), the Supreme Court held that the City of Harrisburg's Business Privilege and Mercantile Tax as imposed on an importing distributor of malt and brewed beverages is invalid because the Commonwealth has preempted the field. The court stated:

> The regulatory scheme now under review controls a public, state-run monopoly, maintained for the health, welfare and safety of the citizens of this Commonwealth and upon which the Commonwealth depends for substantial revenues. Such pervasive control over all phases of the liquor industry, along with the extensive taxation and fees imposed, indicates the legislature's intent to control this industry and to receive all the benefits inherent by regulating the industry, including raising revenues through regulation to the exclusion of all local attempts to interfere with the state regulation by imposing taxes on a local level.
>
> We conclude that the legislature has adopted a scheme of regulation so pervasive over the entire alcoholic beverage industry, that it has "pre-empted the field" to the exclusion of all interference from subordinate legislative bodies. Such preemption by the legislature bars local legislative control by regulation or taxation.

*Id.* at 223–24, 519 A.2d at 402.[10]

■ Although preemption in the liquor industry by the Commonwealth prevents municipalities from regulating local liquor establishments, it does not prevent taxation under a specific enabling act expressly giving the authorization to tax liquor or malt and brewed beverages.[11] Where

9. Although the Association did not cite to the specific sections of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101—8–803, the following sections contain the relevant subject matters for license fees and discounts, respectively: Sections 405, 469 and 801, and Section 305. The 18% tax added to the retail cost of liquor sold by the Liquor Control Board to taverns is found in the Emergency Liquor Tax, Act of June 9, 1936, Ex.Sess., P.L. 13, *as amended*, 47 P.S. §§ 794–796.

10. Because the decision in *Wilsbach* was a plurality opinion, it is of limited precedential value. *Clement & Muller v. Tax Review Board*, 659 A.2d 596 (Pa.Cmwlth.1995); *Philadelphia v. Tax Review Board*, 144 Pa.Cmwlth. 374, 601 A.2d 875, *petition for allowance of appeal denied*, 531 Pa. 649, 612 A.2d 986 (1992).

11. Assuming that *Wilsbach* is applicable, even though it was interpreting a completely different tax enabling act, at issue was an act allowing general business privilege taxes rather than an act specifically authorizing taxes on liquor.

the power is with the legislature to preempt a field, the legislature also has the power to make exceptions by expressly giving a municipality the power to tax under defined circumstances. Also, preemption, as a judicial doctrine, is only relevant where the legislature is silent about whether a municipality may regulate the field. However, in this instance, the legislature was not silent as to local taxation; it specifically authorized the City to impose this liquor-by-the-drink tax. That the enabling Act was enacted prior to legislation the Supreme Court held, by a plurality, has "preempted the field" is not determinative because the General Assembly has not repealed the specific authorization of power to the City.

■ Moreover, in *Clement & Muller,* we held that the general tenor of the regulatory scheme in the Liquor Code does not in any way indicate a legislative intention that municipal bodies should not be able to enact "nonregulatory, revenue-raising measures that might arguably supplement that scheme". *Clement & Muller,* 659 A.2d at 598. Where a tax does not regulate or impose restrictions on the alcoholic beverage industry, its purpose is to raise revenue, and it is not contradictory to or in conflict with any revenue-raising tax imposed by the Commonwealth, it is not prohibited by the Commonwealth's regulatory preemption.[12] *Id.* at 599. Accordingly, the doctrine of preemption does not invalidate the Ordinance and the Association has failed to establish a clear right to relief. The order of the trial court denying the injunction is affirmed.

### ORDER

AND NOW, this 22nd day of December, 1995, the order of the Court of Common Pleas of Philadelphia County, dated December 28, 1994, No. 2153, is affirmed.

COLINS, President Judge, dissenting.

I respectfully dissent.

The authority for this taxing scheme is alleged to be found in Section 4 of the First Class School District Liquor Sales Tax Act of 1971 (Enabling Act), Act of June 10, 1971, P.L. 154, 53 P.S. § 16134, which has never been repealed but has not been used in over two decades.

The 23-year lapse between enactment and use is significant because the Enabling Act was originally enacted "to resolve an imminent financial crisis in the School District." (Majority Opinion at 4). It strains credulity to believe that a stopgap "emergency" tax matter, which was designed to deal with an "imminent" crisis and which has lain dormant for 23 years, can be used as authority for the instant tax.

As well as being a regressive, ill-conceived tax, which probably diverts more revenues to the suburbs than it raises for the city (areas which are not subject to appellate review), the tax is also illegal.

---

**12.** None of the Commonwealth's taxes on the liquor industry are duplicated by the City's liquor-by-the-drink tax. The Spiritous and Vinous Liquor Tax Law, Act of December 5, 1933, 1933–34 Sp.Sess., P.L. 38, 47 P.S. §§ 745–767, is a tax on manufacturing. The Malt Beverage Tax Law,

Act of May 5, 1933, P.L. 284, *as amended,* 47 P.L. §§ 103–120.3, taxes manufacturers and transporters of liquor into the Commonwealth. The Emergency Liquor Tax is added to the retail cost of liquor sold by the Board and would be paid by the tavern in this case.