546 A.2d 1260

Bonnie Beers (Token Claimant), Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Pearlie M. Parker, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

United Food and Commercial Workers Union, Local 1357, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Delores A. Wetzel, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

252

Argued December 14, 1987, before Judges CRAIG and BARRY, and Senior Judge NARICK, sitting as a panel of three.

*Ira H. Weinstock,* with him, *Gerard M. Mack-arevich,* for petitioner, Bonnie Beers.

*Donald Marritz,* with him, *Carolyn Carter, Legal Services, Inc.,* for petitioner, Delores Wetzel.

*Jonathan Zorach,* with him, *James K. Bradley,* Assistant Counsel, and *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

*Peter V. Marks, Sr., Kirschner, Walters & Willig,* for petitioner, United Food & Commercial Workers Union, Local 1357.

*Bruce D. Bagley,* with him, *Alan R. Boynton, Jr., Norman I. White,* and *H. Lee Roussel, McNees, Wallace & Nurick,* for intervenor, Knouse Foods Cooperative, Inc.

OPINION BY JUDGE BARRY, July 29, 1988:

Section 402.5 of the Unemployment Compensation Law (Law), Act of December 5, 1936, P.L. 2897, *as amended,* added by the Act of July 1, 1985, P.L. 96, 43 P.S. §802.5 provides in pertinent part:

> Notwithstanding any other provision of this act with respect to service performed in a 'seasonal operation' or 'seasonal industry', as defined in this section, benefits shall not be paid to a seasonal worker, based on such services, for any week of unemployment occurring outside of the normal seasonal period of operation, provided there is a contract or reasonable assurance that

such worker will perform services in that seasonal industry in his next normal seasonal period.

Before us are four appeals that have been consolidated for our review. Two of these appeals are from orders of the Unemployment Compensation Board of Review (Board) affirming decisions of the referee to grant seasonal status to a fruit or vegetable food processing operation of an employer. The remaining two are from an order of the Board reversing a decision of the referee to deny seasonal status to a fruit or vegetable food processing operation of an employer. The central issues of these appeals are whether the Board erred as a matter of law in concluding that the operation in question was a seasonal operation for the purpose of Section 402.5, and whether Section 402.5's authorization of the denial of benefits to seasonal workers in the fruit and vegetable food processing industry during the off-season period, and the procedures provided therein for obtaining a seasonal determination and review thereof comply with the mandates of the state and federal constitutions. We present first the facts and procedural history of each case separately.

### 367 C.D. 1987

Knouse Foods Corporation (Knouse) is engaged in the commercial processing of cherries into pie filling at its plants at Peach Glen and Biglerville. It also processes apples at both plants and peaches at the Peach Glen plant.

On or about May 20, 1986, Knouse applied to the Office of Employment Security (OES) for a determination that its fresh cherry processing operations at its Peach Glen and Biglerville plants were seasonal operations for the purposes of Section 402.5. Copies of these applications were posted on an unspecified date. On June 11, 1986, the OES granted Knouse's applications.

The normal seasonal period for the fresh cherry processing operation at the Peach Glen plant was determined to run from June 16, 1986 to August 9, 1986, while the normal seasonal period for the fresh cherry processing operation at the Biglerville plant was held to run from June 16, 1986 through July 19, 1986. Notices of these determinations were received by Knouse on June 12, 1986 and copies of the applicable notice were posted on each of its six bulletin boards in each plant on June 13, 1986.

On June 20, 1986, Local No. 1357 of the United Food and Commercial Workers Union (Union), together with Bonnie Beers, an employee at Knouse's Peach Glen plant, filed an appeal from the OES's determinations on behalf of Ms. Beers and all other similarly situated employees. Following a hearing on the matter, the referee issued a decision reversing the OES's determinations. Knouse then appealed to the Unemployment Compensation Board of Review (Board), which reversed the decision of the referee. In doing so, the Board made the following findings of fact regarding Knouse's cherry processing operations:

7. Knouse processes approximately 3,000 tons of cherries at Peach Glen and approximately 1,000 tons at Biglerville.

8. Approximately fifteen (15) to twenty (20) tons of fresh cherries are frozen at Biglerville and none are frozen at Peach Glen.

9. Cherries are a perishable product and must be processed within forty-eight hours from the time of receipt from the growers.

10. Upon receipt from the growers, the fresh cherries are placed in a preparation room, which is used only for cherries during the fresh cherry season.

11. This preparation room is kept separate from the remainder of the Peach Glen plant and

most of the employees hired for the cherry season are employed in that room.

12. The cherry processing operation requires that the cherries be cooled in tanks and then pitted by pitting machines.

13. The cooking [sic] tanks and pitters at Peach Glen are utilized only for the processing of cherries and not for any other fruit.

14. After pitting, the cherries are further processed into pie filling to be sold.

15. At the Biglerville plant, there is no separate room for preparation but there are cooling tanks and pitting machines used only for cherries.

16. There were approximately 325 employees on the payroll at Peach Glen and 180 to 200 employees at Biglerville. Sixty percent (60%) of the work forces at each plant work less than 180 days per year.

17. The preparation room at Peach Glen is also used for the processing of peaches; however, this fruit is not cooled, so the [cooling] tanks are not needed, and they are pitted by different machines than those used by claimant [when removing pits from cherries].

18. Apples pass through the preparation room at Peach Glen; however, they are not processed but merely proceed on a conveyor belt to other areas of the plant.

An appeal to this Court followed.

1754 C.D. 1987 & 1764 C.D. 1987

Knouse is engaged in the commercial processing of apples into applesauce and apple juice at its plant in Orrtanna.

On August 7, 1986, Knouse applied to the OES for a determination that its conventional applesauce production operation and its apple juice production operation at its Orrtanna plant were seasonal operations for the purpose of Section 402.5. Copies of this application were posted on Knouse's bulletin boards when an OES representative visited the plant on August 21, 1986. On September 5, 1986, the OES granted Knouse's application. The normal seasonal period for these operations was held to run from September 8, 1986 to May 13, 1987. The Orrtanna plant manager was asked by Knouse's personnel manager to post copies of the determination sometime in the beginning of October, 1986. It was alleged that copies of the determination may not have been properly posted. However, the union received a copy of the determination in a timely manner and thereafter filed a timely appeal therefrom on behalf of its membership. After a hearing on the matter, the referee affirmed the determination of the OES. In doing so, she made the following findings of fact regarding Knouse's apple processing operations:

7. The Orrtanna plant employs approximately 270 persons when processing fresh apples. Of that number approximately 130 are seasonal, work only while fresh apples are being processed and are laid off at the end of the fresh apple season.

8. The Orrtanna plant operates limited maintenance and warehousing facilities on a year-round basis and also operates an aseptic line on a year-round basis.

9. The Orrtanna plant operated for the processing of apples for 153 days of work during the 1985 apple season.

10. The Orrtanna plant is scheduled to operate for the processing of apples for approxi-

mately 151 days of work in the 1986 apple season.

11. The aseptic line is separate from the fresh apple processing operation. Persons working on the aseptic line generally work year round as do maintenance and warehouse workers.

12. The apple processing equipment used in the normal apple line at the Orrtanna plant is shut down at the end of the apple season until the next apple season begins.

. . .

14. The Orrtanna plant is functionally distinct from other Knouse Foods Cooperative Plants.

The union appealed the referee's decision to the Board, which affirmed it. An appeal by the union to this Court followed, as did an appeal by Dolores E. Wetzel, an employee at Knouse's Orrtanna plant who had not been a party to the administrative agency action. Ms. Wetzel also filed a "Motion to Remand", in which she requested that the matter be remanded so that the Board could consider evidence which she claimed showed that Knouse's conventional applesauce production operation was operated during the 1986-87 season for a period in excess of 180 days. That motion was denied by this Court.

### 404 C.D. 1987

W.E. Bittinger Co. (Bittinger) is engaged in commercial processing of corn.

On May 20, 1986, Bittinger applied to the OES for a determination that its fresh sweet corn processing operation was a seasonal operation for the purpose of Section 402.5. Copies of the application were conspicuously posted on three bulletin boards in the plant on May 20, 1986. On June 10, 1986, the OES granted Bittinger's

application. The notice of this determination was received by Bittinger on June 11, 1986 and copies of it were conspicuously posted on the three bulletin boards in the plant on the same day.

On July 22, 1986, Pearlie M. Parker, an employee of Bittinger, filed an appeal from that determination. This appeal was deemed to be timely. After a hearing on the matter, the referee affirmed the OES's determination. In doing so, the following findings of fact regarding Bittinger's corn processing operations were made:

8. W.E. Bittinger Co., Inc. is engaged in commercial corn freezing contracts with growers in Eastern Shore, Pennsylvania and New York for such corn which is hauled by truck to the employer's plant in Hanover, Pennsylvania. The processing of such corn into a frozen state is done each year from approximately mid July to mid October—depending on the weather. The corn is placed in large 'tote bins' and stored in the freezer for future packaging and distribution during other months of the year.

9. Due to the growing season, on July 17, 1986, the employer began trucking in corn to be processed.

10. The employer uses the processing area of his plant and the processing machinery only during fresh corn processing season from approximately mid July to mid October.

11. The employer has another area where a repack operation is conducted on a yearly basis. The frozen corn in the 'tote bins' is removed from storage and repacked in accordance with the orders of the employer's customers.

12. The employer hires approximately 100 persons in the repack operation who work full time year round and approximately 250 other

workers who work only during the fresh corn processing seasons.

Ms. Parker appealed the referee's decision to the Board, which affirmed it. An appeal to this Court followed.

## SCOPE OF REVIEW

We preface our discussion of the issues raised by the petitioners, by noting that the scope of review of this Court is limited to determining whether constitutional rights have been violated, an error of law was committed, or necessary findings of fact are not supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

## I.   STANDING

Knouse contends that Ms. Beers is not employed at its Biglerville plant and that the union does not represent its employees at that plant. Therefore, Knouse argues, both Ms. Beers and the union lacked standing to challenge the determination of the OES regarding the cherry processing operations at its Biglerville plant. The standing issue raised by Knouse becomes significant if no person with standing challenged the OES's determination that the cherry processing operations at Knouse's Biglerville plant constituted a seasonal operation either by an appeal from that determination or from the OES's denial of his or her application for benefits pursuant to Section 402.5. If that would be the case, no claimant would be entitled to relief even if this Court should determine that the board erred in concluding that Knouse's fresh cherry operations at that plant constituted a seasonal operation.

Here, the referee made no findings of fact relevant to the issue of standing, despite Knouse's arguments re-

lating to it. Ms. Beers did, however, testify at the referee's hearing that she had been only employed at the Peach Glen plant. The union, on the other hand, contended that it did represent employees at the Biglerville plant. It is not within the province of this Court to make factual findings. Therefore, if findings of fact relevant to the issue of standing should become relevant, a remand to the Board would be necessary so that it could make such findings. The lack of standing, however, does not affect the ability of this Court to address the remaining issues raised by the petitioners; *i.e.,* an attack on the petitioner's standing does not constitute a question as to our appellate jurisdiction. Accordingly, a remand would be necessary only if it is subsequently determined in this opinion that the Board erred in concluding that Knouse's fresh cherry processing operations at its Biglerville plant constituted a seasonal operation.

Knouse also argues that Ms. Wetzel lacks standing to appeal the order of the Board affirming the decision of the referee regarding its apple processing operations at its Orrtanna plant because she was not a party to the administrative action below. Section 702 of the Administrative Agency Law, 2 Pa. C. S. §702, however, states:

Any *person* aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure). (Emphasis added.)

The Supreme Court, in its opinion in *Department of Aging v. Lindberg,* 503 Pa. 423, 469 A.2d 1012 (1983), stated that Section 702 "makes it unmistakably clear that the Legislature intended to subject the actions of [administrative] agencies to increased judicial review,

not to insulate them from it." Thus, it would appear that an appeal from a Commonwealth agency adjudication may be taken by any aggrieved *person* (as distinguished from party) who has a *direct* interest (as distinguished from a direct, immediate and substantial interest) in the adjudication. *See* Darlington, McKeon, Schuckers & Brown, 1 *Pa. Appellate Practice* §501.12.

One has a direct interest in the adjudication of a governmental agency if he is able to show that that adjudication causes harm to an interest of his; *i.e.*, he must show that the claimed harm to his interest can be said to have resulted in some concretely demonstrable way from the adjudication. *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 195-97, 346 A.2d 269, 282-83 (1975). Although this Court has held that a seasonal determination, by itself, does not adversely affect the right of an employee performing services for the operation determined to be seasonal to collect unemployment compensation benefits, *Parker v. Department of Labor & Industry,* 115 Pa. Commonwealth Ct. 93, 540 A.2d 313, 329-30 (1988), that determination when coupled with a later determination that the employee has a reasonable assurance of performing services for a seasonal fruit or vegetable food processing operation during the season following the off-season period, does adversely affect that right, since the employee would be declared ineligible for benefits.

Here, Ms. Wetzel performs services for an operation at Knouse's Orrtanna plant that has been held by the Board to be a seasonal operation. Since she would be adversely affected by that determination if it is later determined that she has reasonable assurance of performing services for a seasonal fruit or vegetable food processing operation in the season following the off-season

period, it is the conclusion of this Court that she had standing to appeal from the order of the Board.

## II. SEASONAL OPERATIONS

The first central issue to the consolidated appeals is whether the Board erred as a matter of law when it concluded that the employers were engaged in seasonal operations, as that term is defined in Section 402.5.

Section 402.5(4) defines the term "seasonal operation" as follows:

> [A]n operation in which it is customary for an employer engaged in a seasonal industry as defined in paragraphs (1) and (3) of subsection (h) of this section, to operate all or a portion of its business during a regularly recurring period of one hundred eighty (180) days of work or less for a normal seasonal period during a calendar year. An employer may be determined to be engaged in a seasonal industry as defined in this section, with respect to a portion of its business, only if that portion, under the usual and customary practice in the industry, is identifiable as a functionally distinct operation.

The term "seasonal industry" is defined in the same section as:

> [A]n industry, establishment or process within an industry which, because of climatic conditions making it impractical or impossible to do otherwise, customarily carries on fruit or vegetable food processing operations, or both, only during a regularly recurring period of one hundred eighty (180) days of work or less in a calendar year.

The term "fruit or vegetable food processing operation" is also defined in Section 402.5(4). It is:

[T]hose services performed in connection with commercial canning or commercial freez-. ing of fruits and vegetables.

Under these statutory definitions the business of the employer, or the portion thereof, for which seasonal status is sought must meet the following requirements:

1) It must be an industry, establishment or process within an industry in which services performed in connection with commercial canning or commercial freezing of fruits and/or vegetables are performed.

2) It must customarily remain in operation for a regularly recurring period of one hundred eighty (180) days or less.

3) 'Climatic conditions' must make it impossible or impractical for it to remain in operation for more than one hundred eighty (180) days.

4) The operations carried out therein are, under the usual and customary practice of the industry, 'functionally distinct' from the operations carried out in the other portions of the employer's business if seasonal status is sought for only a portion of employer's business.

The petitioners in these consolidated appeals essentially contend that the fruit or vegetable food processing operations for which Knouse and Bittinger sought seasonal status do not constitute seasonal operations because (1) *climatic conditions* do not make it impossible or impractical for Knouse and Bittinger to carry them on for more than 180 days a year and (2) they are not, under the usual and customary practice of the industry, *functionally distinct* from the operations carried out in the other portions of Knouse's and Bittinger's businesses.

The General Assembly has not defined the term "climatic conditions" as used in Section 402.5. There-

fore, under Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1903, the term must be construed according to its common and approved usage. "Climate" has been defined as the average course or condition of the weather at a place over the period of years as exhibited by temperature, wind velocity, and precipitation. Webster's New Collegiate Dictionary (1981) at 206. Therefore under Section 402.5, a seasonal industry must be an industry, establishment or process within an industry which, because of weather conditions—specifically temperature, wind velocity and/or precipitation—can only be carried on, either in actuality or from a practical standpoint, for a regularly recurring period of one hundred eighty days or less.

In each case, the employer sought seasonal status for an operation involving activities relating to the processing of a perishable fruit or vegetable—specifically, cherries, apples and corn—in a *fresh* state. Although, in reviewing the record in each case, we find testimony which established that cherries, apples and corn are perishable and must be processed either immediately upon receipt or within a short time thereafter, we find no testimony establishing that, because of weather conditions making it impossible or impractical to do otherwise, they can only be harvested in a condition suitable for processing for a period of one hundred eighty days of work or less or findings of fact to that effect. It is this Court's conclusion that it would be a futile exercise to remand for a factual finding on this issue. The Court takes judicial notice of the fact that fruits and vegetables must be processed promptly and that the statute comports with what is common knowledge. Having reached this conclusion, we are able to conclude that climatic conditions do make it impossible or impractical for the employers in these cases to carry on the operations for which seasonal status was sought for more than one hundred eighty days of work.

Ms. Beers and the union contend that, because the evidence shows that Knouse, at its Biglerville plant, freezes a portion of its fresh cherries after they have been pitted and cooled, or purchases cherries in such a state from out-of-state growers, and, for a period of one or two weeks during all but one of the months outside the fresh cherry processing season, cans and cooks them, it can not be said that climatic conditions make it impossible or impractical for it to carry on its fresh cherry processing operation for more than one hundred eighty days. Knouse, however, had not sought seasonal status for the activities relating to the canning and cooking of the cherries that had been partially processed and then frozen.

Ms. Wetzel and the union contend that, because the evidence shows that Knouse is able to preserve from 900,000 to 1,000,000 bushels of fresh apples for up to six months by conventional refrigeration or 3,000,000 bushels of unprocessed fresh apples for nine months to a year by controlled atmosphere storage, it cannot be said that climatic conditions make it impossible or impractical for it to carry on its conventional applesauce production and apple juice production operations for more than one hundred eighty days. Again, we believe the statute sets forth reasonable standards which the Board reasonably interpreted.

Ms. Parker contends that, because the evidence shows that Bittinger freezes either fresh ears of corn or kernels of corn in tote bins (large cardboard boxes with plastic liners) after having blanched and cooled them, and, during the entire year, packs them into the containers in which they are sold to consumers, it cannot be said that climatic conditions make it impossible or impractical for it to carry on its fresh corn processing operation for more than one hundred eighty days. Bittinger did not seek seasonal status, however, for the activities relating to the packing of the kernels or ears of

corn that had been partially processed and then frozen in the tote bins.

As with the term "climatic conditions", the term "functionally distinct operation" is not defined in the Act. Therefore, under Section 1903 of the Statutory Construction Act of 1972, it too must be construed according to its common and approved usage. "Function" is defined as "the acts or operations for which a person or thing is specially fitted or used or for which a thing exists." Webster's New Collegiate Dictionary (1981) at 461. "Distinct" is defined as "distinguishable to the eye or mind as discrete." Webster's New Collegiate Dictionary (1981) at 329. Therefore, where an employer seeks a "seasonal operation" designation for only a portion of his business, he must show that the acts or operations carried out by that portion are ones which, under the usual and customary practice in the industry, are identifiable as being distinguishable from the acts or operations carried out in other portions of the employer's business.

The Board here concluded that the portions of the employers' businesses, for which seasonal status was sought, were functionally distinct operations because all or, in the case of Knouse's fresh cherry processing operations, certain pieces of the equipment used in the performance of the activities involved in the operation for which seasonal status is sought are only used during the time that that operation is carried on and not used after that operation is closed down and because a number of the persons employed at the plant in question only work when the operation for which seasonal status is sought is carried on. It is the conclusion of this Court that such analysis is correct; hence, we adopt it.

The union contends that, even if the above analysis followed by the Board is correct, it is flawed. It contends in the appeal regarding Knouse's fresh cherry processing operation that the flaw in the Board's analysis is its disregard of evidence showing that the machinery

used in cooking, filling and sealing the fresh cherries into cans is the same as that used for all fruits, be they in a fresh or frozen state, and that some, though not all, workers performing services related to the preparation of fresh cherries for cooking and canning also perform services related to the preparation of other fresh fruits for cooking and canning. We reject the argument that the Board's analysis is flawed.

In the appeal regarding Knouse's conventional applesauce production and apple juice production operations, the union contends that the Board's analysis is flawed because it ignores evidence showing that employees performing services for those operations, who have seniority over persons performing services for the aseptic applesauce production operation or the warehouse or maintenance operations and the ability to perform those jobs, are, after the conventional applesauce production and apple juice production operations are closed down, able to bump into those jobs pursuant to a collective bargaining agreement between the union and Knouse, thereby displacing those who had been performing the jobs that are performed on a year-round basis. This, according to the union, shows that the workforce at the Orrtanna plant is a unified one whose job involves year round processing of apples and upkeep of the facilities used to carry on such processing. The argument of the union concerning this bumping procedure does not support the union's contention in the opinion of the Court but supports instead the Board's conclusion that the workers are laid off because of the seasonal nature of this portion of the operation.

In all of the appeals, the petitioners argue that the analysis followed by the Board is not correct. It is argued that one function is performed at each of the plants involved—namely the processing of fruits or vegetables—and that the portions of the employer's businesses for which seasonal status was sought are merely

integral or interrelated parts of a unitary fruit or vege-table food processing operation. Ms. Beers and the un-ion contend that one function is performed at Knouse's Peach Glen and Biglerville plant, namely, the process-ing of fruit—and that the fresh cherry processing opera-tion and the other operations involving the processing of frozen cherries and other fresh or frozen fruits are merely interrelated parts of one single fruit processing operation, not functionally distinct operations. Ms. Wetzel and the union contend that one function is per-formed at Knouse's Orrtanna plant—the processing of apples—and that conventional applesauce production operation, the apple juice production operation, the aseptic applesauce production operation, and the trans-portation, maintenance and warehousing operations are all integral parts of a unitary fruit processing operation, not functionally distinct operations. Ms. Parker con-tends that one function is performed at Bittinger's plant—namely the processing of corn—and that the fresh corn processing operation and the packing opera-tions, are merely interrelated parts of a single, unitary vegetable processing operation, not functionally distinct operations.

The appellants would have this Court construe the requirement that when seasonal status is sought for only a portion of an employer's business, none of the other portions of the employer's business can constitute opera-tions involving the performance of activities relating to processing of fruits or vegetables. Such a construction would result in a situation whereby only an employer whose plant is completely shut down, and who is not carrying on any activity relating to the processing of fruits or vegetables, for 180 days or more because of cli-matic conditions making it impossible or impractical to do so, would be entitled to seasonal status. Consequent-ly, employees who only work one hundred eighty days, because the operation or operations for which they per-

form services can only be carried on for a total of only one hundred eighty working days or less because of climatic conditions, would still be entitled to benefits. However, this argument ignores the clear import of Section 402.5 which permits a finding that portions of the operation are functionally distinct.

We note that in each petitioner's argument on this issue, reference is made to comments made by Representative Cole of Adams County during House debates on the legislative bill which resulted in Section 402.5. The union also refers to comments made by Representative Mayernick during the same debates. It has been recognized by this Court, however, that the comments of individual legislators during debates on legislative bills are not indicative of the legislative intent behind the bill. *Hoffman v. Pennsylvania Crime Victim's Compensation Board*, 46 Pa. Commonwealth Ct. 54, 405 A.2d 1110 (1979).

In connection with their arguments why their employers' operations do not meet the criteria for a seasonal operation, petitioners Beers, Parker and Wetzel contend that no findings of fact were made, and no evidence was presented, showing that their employers' operations are, *under the usual and customary practice in the fruit processing industries,* identified as being a functionally distinct operation. Petitioners apparently would have this Court require their employers to present evidence showing that the same operations of other companies are usually and customarily functionally distinct and for the fact-finder to make findings of fact whether the same operations of other companies are usually and customarily functionally distinct. We do not believe this was necessary evidence in this case.

Finally, we note that the same petitioners also contend that the Board failed to make findings of fact, and that their employers failed to present evidence, supporting the conclusion that the normal seasonal period

for the operations for which seasonal status was sought were the dates found by the Board to constitute the normal seasonal period. Under Section 402.5(h), "normal seasonal period" is defined as "the normal seasonal period . . . during which workers are ordinarily employed for the purpose of carrying on seasonal operations in each seasonal industry, as defined in this section."

Apparently, petitioners would have this Court conclude that their employers must present evidence showing the specific dates during which it carried on their operations for which seasonal operation was sought during at least the past five years and for the fact-finder to set forth those dates employers carried on those operations in its findings of fact. We reject this argument and refuse to impose this burden on the fact finder.

## III.  CONSTITUTIONALITY

The other central issue to these consolidated appeals is that of whether the provisions of Section 402.5 authorizing the denial of benefits to seasonal workers in the fruit and vegetable food processing industry during the off-season period and the procedure established therein for seasonal determinations and review thereof comply with the mandates of the state and federal constitution.

Petitioners Beers, Parker and Wetzel contend that the provisions of Section 402.5 violate the guarantees provided by Article III, Section 32 of the Pennsylvania Constitution—a provision which has been held to have a meaning and purpose sufficiently similar to that of the Equal Protection Clause. However, since the class involved (seasonal workers in the fruit and vegetable food processing industry) is not one which is suspect or "sensitive" and the right affected is not one which is fundamental or "important" in the constitutional sense, and the legislation bears some rational relationship to a legitimate state end—namely the conservation of the un-

employment compensation fund and the preservation of existing fruit and vegetable food processing jobs in the Commonwealth, Section 402.5 does not violate Article III, Section 32 of the Pennsylvania Constitution. *Parker,* 115 Pa. Commonwealth Ct. at 113-14, 540 A.2d at 324-25 (1988).

The same petitioners next contend that the legislature in enacting Act 30 of 1985 (Act 30), of which Section 402.5 is Section 6, failed to comply with the provisions of Article III, Sections 1, 2, 3 and 4 of the Pennsylvania Constitution.

The title of Act 30 read in pertinent part: "An act . . . providing for benefits for certain seasonal workers . . ." A title is constitutional if it puts a reasonable person on notice of the general subject matter of the Act. *In re Department of Transportation,* 511 Pa. 620, 626-27, 515 A.2d 899, 902 (1986). One who seeks to declare a title unconstitutional under Article III, Section 3 must demonstrate either (1) that the legislators and the public were actually deceived as to the Act's contents at the time of passage, or (2) that the title on its face is such that no reasonable person would have been on notice as to the Act's contents. *Id.* at 627, 515 A.2d at 902. The title of Act 30—specifically the phrase "providing benefits for seasonal workers"—provided sufficient notice to seasonal workers who were able to collect unemployment compensation benefits during the entire year, that their ability to collect benefits was affected, since a reasonably inquisitive person, upon reading the title of Act 30, would become curious as to what benefits were now being provided. *Parker,* 115 Pa. Commonwealth Ct. at 121, 540 A.2d at 328. Therefore, since the petitioners have not contended that the legislators or the public were actually deceived as to the contents of Act 30 at the time of its passage, it cannot be concluded that Article III, Section 3 has been violated.

Furthermore, because the final form of House Bill 1042 (1985 Session), in which Act 30 had its genesis, had a title that clearly stated its contents and was presented to each house for its consideration and adoption, it cannot be concluded that it was enacted in violation of Article III, Section 1 of the state Constitution. *Id.* at 93, 540 A.2d at 313.

Finally, because the amendments made by the Senate to the version of House Bill 1042 that had been sent to it by the House were germane to, and did not wholly change, the general subject of that bill (agricultural business in the Commonwealth), the version of that bill that was sent back to the House by the Senate need not have been referred to the appropriate House committee before voting on it and need not have been considered in the House for three separate days, as required by Article III, Sections 2 and 4. *Id.* at 122-23, 540 A.2d at 328-29.

The last constitutional argument raised by the petitioners Beers, Parker and Wetzel is that the procedure set forth in Section 402.5 for seasonal determinations and review thereof violate their constitutional right to procedural due process. It is argued that, under the procedure established by Section 402.5, affected workers are not provided with adequate and timely notice of their employer's filing of an application for seasonal determination with the OES and an opportunity to be heard in regard to said application before the OES has entered its decision on the application. The OES's seasonal determination does not, however, constitute an adjudication of the employee's right to collect unemployment compensation benefits. Therefore, the United States Constitution does not require that employees be given adequate and timely notice of the employer's filing of an application for seasonal determination with the OES or an opportunity to be heard by the OES in

regard to said application, prior to its decision on it. *Id.* at 125, 540 A.2d at 329-330.

The United States Constitution only requires that an employee be given notice of the OES's denial of an employee's application for benefits based on his ineligibility under Section 402.5 and be afforded an opportunity to be heard on the issue of whether the operation for which he performs services is a seasonal operation prior to the time that the OES's determination of his or her ineligibility for benefits becomes final.

Petitioners also argue that, under Section 402.5, affected workers are not given adequate and timely notice of the entry of the OES rulings on the applications for seasonal determinations and of appeals by employers from the decisions of the OES or any other administrative tribunals of the Department of Labor and Industry to deny seasonal status. An employee, however, need not appeal from a seasonal determination when it is in favor of the employer or participate in an employer's appeal from an unfavorable ruling by the OES or any other tribunal on the application for seasonal determination and his failure to do so will not prevent him from litigating the issue of whether the operation for which he performs services is a seasonal operation in the context of a referee's hearing on the denial of his application for benefits. *Id.* at 93, 540 A.2d at 313. Accordingly, concerns about proper notice of such action is unwarranted.

All the petitioners need be concerned about is notice of the entry of the OES's denial of benefits pursuant to Section 402.5, the entry of the decisions of the Department of Labor and Industry's other administrative tribunals in response to their appeals from those denials and of the filing of appeals by their employers from a decision or decisions of the Department's other tribunals favorable to the petitioners. Under the procedure

established by the Law and regulations promulgated pursuant thereto for determination of applications for benefits and review, thereof, a worker is always adequately informed of the determination made at each stage of the administrative procedure, as well as of any appeal filed by his employer from any such determination. As previously summarized in *Parker. Id.* at 128, 540 A.2d at 331.

Section 501 of the Law requires that the worker be given individual written notice of the OES's denial of his benefits under Section 402.5. If he appeals from that determination, he must, under Section 502 of the Law, be given individual written notice of the decision of the referee. If the referee reverses the OES, the worker must be given individual written notice by the Board of any appeal filed by his employer therefrom. 34 Pa. Code §§101.103, 101.104. Both parties must then, under Section 504 of the Law, 43 P.S. §824, be given individual written notice of the Board's decision. Finally, where an appeal from the Board's decision is filed with this Court, the appellant is required under the Rules of Appellate Procedure to serve a copy of the petition for review upon the respondent.

Petitioners finally argue that their procedural due process rights are violated because of various alleged deficiencies of, and inaccuracies in, the contents of the form used by the employer to apply to the OES for a seasonal determination (application form) and form used by the OES to notify the employer of its ruling on the application for seasonal determination (notice of seasonal determination). These can be summarized as follows:

(1) The application form does not inform affected workers of their right to be heard and to submit relevant information prior to, and subsequent to, the OES ruling on the application.

(2)  The application form does not inform affected workers of its legal significance; *i.e.,* it does not inform affected workers that, by filing this form with the OES, the employer is initiating an administrative procedure to obtain a determination that could result in the employees being denied benefits.

(3)  The application form does not advise affected workers of the statutory criteria for a seasonal operation.

(4)  The application form does not elicit information from the employer which would support a finding that the operation for which seasonal status is sought satisfies all the statutory criteria for a seasonal operation.

(5)  The notice of seasonal determination does not inform affected workers of the right to appeal that determination.

(6)  The notice of seasonal determination does not inform affected workers that if they do not appeal from the seasonal determination within fifteen days of that determination that determination is final and binding as to them.

(7)  The notice of seasonal determination inaccurately states that it is not a determination of claimant eligibility or of employer relief from charges.

(8)  The notice of seasonal determination does not contain all necessary findings of fact and conclusions of law.

None of these complaints are of any merit.

Initially we observe that, despite all of these alleged inadequacies and inaccuracies in the contents of these forms, it does not appear that these petitioners have been denied procedural due process as a result thereof. They either filed timely appeals from the notices of sea-

sonal determinations or were permitted to appeal nunc pro tunc from such determinations. Consequently they cannot complain that the forms failed to notify them of their right to appeal from, and to be heard on, the issue of whether the operation they perform services for is a seasonal operation, and of the time period within which the appeal must be filed and the consequences of their failure to do so. Nor can they complain that such forms misled them into not filing appeals challenging the seasonal determinations.

Furthermore, the statements that the petitioners assert should be in the forms involved would be inaccurate. Affected workers do not have right to be heard, and to submit relevant information, prior to the OES's ruling on the employer's application. They only have a constitutional right to be heard on the issue of whether the operation for which they perform services is a seasonal operation prior to the time that the OES's denial of benefits pursuant to Section 402.5 becomes final. Furthermore, a statement in the notice of seasonal determination that failure of the employees to appeal a seasonal determination within fifteen days after that determination is issued will result in that determination becoming final and binding upon the employees would be an inaccurate statement.[1] As we have previously stat-

---

[1] Even if employees were required to file an appeal within fifteen days of the entry of the seasonal determination, we note the following language in the notice of seasonal determination:

RIGHT TO APPEAL: This determination becomes final unless an appeal is timely filed. If you wish to file an appeal, you must do so in writing, either in person or by mail, to any office of the Office of Employment Security. If you file an appeal, it must be delivered or postmarked on or before the last date to appeal as shown above. . . .

The last day to appeal is indicated as being the fifteenth business day following the mailing date of the notice. Petitioners apparently would contend that the notice is addressed to the employer and thus affected workers would not know that such language is addressed to them.

ed, failure to appeal a seasonal determination within fifteen days thereof will not preclude employees from relitigating that issue within the context of referee's hearings on their appeals from the denial of benefits.

On the other hand, what is viewed by the petitioners as being an inaccurate statement in the notice of seasonal determination is not in fact an inaccurate statement. A seasonal determination does not constitute a determination of claimant eligibility for benefits. Only after an employee who has been laid off at the end of the season has applied for benefits and the OES has determined that he has reasonable assurance of performing services for a seasonal operation in the season following thereafter and that he does not otherwise qualify for benefits is there determination of that employee's eligibility for benefits.

Turning to other contentions, we note that, contrary to the petitioners' assertion, the application form, even though it is not expressly addressed to the employees, does apprise them, if they read it, of its legal significance. It reads in pertinent parts:

In accordance with Section 402.5 of the Pennsylvania UC Law, food processing employers engaged in commercial fruit or vegetable canning or freezing, who seek a designation of seasonal operation must complete a written application for determination of seasonal operation status. To receive a determination, the following questions must be answered and this application returned at least twenty (20) days prior to the estimated beginning date of the normal seasonal period for which the determination is being requested.

. . . . .

Approval of this application may result in the disqualification of unemployment benefits for

. your seasonal workers during the off-season, where a reasonable assurance exists that the workers will return to work for you in the next seasonal period. However, if you do not offer your employees work in the next normal seasonal period, benefits may be approved retroactively, for your workers.

Finally, while these other alleged inadequacies do exist, they are of no constitutional consequence. While the application form does not set forth the criteria for a seasonal operation, this failure or for that matter the failure of the notice of seasonal determination or the notice of ineligibility for benefits to set forth the statutory criteria for a seasonal operation do not constitute a violation of the petitioners' procedural due process rights. Those criteria are clearly enunciated in the definitions set forth in Section 402.5(h), which has been duly published. While the information elicited by the application form is limited, its failure to provide information to support a finding on all the statutory criteria for a seasonal operation, and the failure of the notice of seasonal determination to set forth all the findings of fact and conclusions of law necessary to support the granting of seasonal status are not violations of petitioner's procedural due process rights. An appeal challenging the OES's grant of an application for seasonal determination results in a de novo resolution of the issue of·whether the activities for which seasonal status was sought constituted a seasonal operation.[2] Consequently for this pur-

---

[2] The application form requests the following information: (1) the employer's name and the address where the determination is to be sent; (2) the address where the determination is to be posted; (3) the fruit or vegetable processed and beginning and ending dates of the estimated processing seasons' dates, and the number of days per week the business operates during the season. In addition it asks the employer to state whether it is engaged in whole or in part

pose, the OES seasonal determination is of no consequence. The employer will be required to prove by substantial and competent evidence presented to a referee at the hearing upon that appeal that the operation is a seasonal operation. The referee, and if necessary, the board, will then be required to make their own findings of fact and conclusions of law relevant to the issue of whether the employer's operation is a seasonal operation. It is those determinations that are of consequence.

Thus it is the conclusion of this Court that Section 402.5 was enacted in compliance with the mandates of the state constitution, that its substantive provisions comply with the principles of equal protection under the law, and that the procedures set forth therein, as implemented by the administrative tribunals of the Department comply with the principles of procedural due process.

#### IV. SIMULTANEOUS POSTING

Section 402.5(b) provides in pertinent part:

An application for [a seasonal determination] shall be made on forms prescribed by the department. Such application must be made at least twenty days prior to the estimated beginning date of the normal seasonal period for which the determination is requested. *Simultaneously with the filing of the application* the employer shall conspicuously display on the employer's premises in a sufficient number of places a copy of the application. (Emphasis added.)

Ms. Beers contends that, even if Knouse's fresh cherry processing operation is a seasonal operation, it

in seasonal commercial canning and/or freezing of fruits and/or vegetables and, if so and a portion of the business is engaged in a seasonal industry, whether that portion of the business is a separate operation, section, division, plant, etc.

should not be granted seasonal status because it failed to post copies of its application for seasonal determination on the applicable plant's bulletin boards *at the same time they were filed with the OES*. Apparently she would have this Court conclude that the last sentence of Section 402.5(b) constitutes a mandatory pre-requisite for the granting of seasonal status.

Initially we note that the Board, albeit in the "Discussion" portion of its opinion, stated that Knouse *properly* posted copies of the application for seasonal determination in accordance with the provisions of Section 402.5(b). In reviewing the record, however, this Court is admittedly unable to find evidence that would support a conclusion that the copies of the applications were posted at the same time that the originals were filed with the OES.

Whether a particular statute is mandatory or directory does not depend upon its form but upon the intention of the legislature. *Appeal of Crossley,* 60 Pa. Commonwealth Ct. 351, 354, 432 A.2d 263, 264 (1981). In ascertaining whether the legislature intended particular statutory language to be mandatory or not, it must be decided whether the thing directed to be done is of the essence of the thing required. *Id*. If the thing directed to be done is the essence of the thing required by the statute, then the statute is mandatory. *West Penn Poser Co. v. Public Utility Commission,* 104 Pa. Commonwealth Ct. 81, 521 A.2d 751 (1987). However, if the statute merely directs that certain proceedings be done in a certain manner or at a certain time, it is directory. *Id*.

It is the conclusion of this Court that the *simultaneous* filing of the application for seasonal determination and posting of copies of it on the employer's premises is not the essence of that which is required by Section 402.5(b). The employer is directed to post copies of its

application for seasonal determination merely to inform the employees of its filing and not to enable the employees to present a case in opposition to the application at a hearing to be held before the application is ruled upon by the OES. *See Parker,* 115 Pa. Commonwealth Ct. 126, 540 A.2d at 330 (the posting of the application directed by the statute is done as matter of courtesy to the employees).

It is significant to note that, in the sentence immediately preceding the sentence in question, the legislature has utilized language which this Court has held made the filing deadline set forth therein mandatory. *Knouse Foods Cooperative, Inc. v. Unemployment Compensation Board of Review,* 115 Pa. Commonwealth Ct. 441, 540 A.2d 626, 630 (1988).

Accordingly, the failure of Knouse to simultaneously file its applications for seasonal determinations regarding its fresh cherry processing operations at its Peach Glen and Biglerville plant and post copies thereof on those plants' bulletin boards does not preclude it from being granted seasonal status for those operations.

## REFEREE'S RULINGS

Ms. Beers and Parker also contend that the referee presiding over the hearings on their appeals from the OES's determinations erred when he refused to issue requested subpoenas duces tecum and when he refused examination of an OES representative in the appeal from the OES's seasonal determinations.

Prior to the hearings before the referee on the appeals by Ms. Beers and Ms. Parker from the OES's granting of Knouse's and Bittinger's applications for seasonal determinations, counsel for said petitioners, Donald Marritz, requested by letters dated July 1, 1986 and July 28, 1986, that the referee issue subpoenas duces

tecum directing that an OES representative bring to those hearings the following documents:

1) the employer's application and OES's notice of determinations concerning the operation in question;

2) all documents relating to any application by the employer for seasonal determination or determination by the OES that the operation was a seasonal operation;

3) all other documents and correspondence relating to the employer's application for seasonal determination and the OES's determination that the operation was a seasonal operation;

4) all rules and regulations in accordance with which the OES renders its seasonal determinations;

5) any and all documents—including but not limited to bulletins, memoranda, letters, instructions, etc. concerning the OES's interpretation, application and administration of Section 402.5;

6) all documents relating to the OES's determination of whether or not the employer carried on the fruit or vegetable food processing operation only for 180 days of work or less;

7) all documents relating to the OES's determination of whether or not any "seasonal operation" of the employer is identifiable as a "functionally distinct operation . . . under the usual and customary practice in the industry."

The referee refused to issue such subpoenas.

Subsequently, at both hearings, Mr. Marritz, attempted to question William Moulfair, an OES representative, as to the decision-making process followed by the OES in granting Knouse's and Bittinger's application for seasonal determinations. Upon objection thereto, the referee, in each case, precluded such questioning on the ground that it was irrelevant. The referee held that the issue at the hearing was not how the OES had reached its conclusions that Knouse's fresh cherry pro-

cessing operation and Bittinger's fresh corn processing operation were seasonal operations but whether those conclusions were correct; *i.e.* whether the operations were seasonal operations.

The petitioners argue that the information they sought to elicit by the precluded questioning and the documents they sought to subpoena would have shown that their rights to procedural due process were being violated and that, as a result of the referee's refusal to issue the requested subpoenas and to allow the line of questioning their counsel sought to utilize, they were denied a full and fair hearing.

Even if they had been able to establish inadequacies in the decision-making process followed by the OES in ruling upon the applications for seasonal status, the petitioners would have shown no constitutional violations, inasmuch as an appeal challenging the OES's seasonal determination result in a de novo determination of the issue of whether the operation for which seasonal status is sought is in fact a seasonal operation. If an appeal challenging the OES's seasonal determination is filed, the OES's determination is not of final import. The employer would, thereupon, be required to establish by substantial competent evidence presented at a hearing before a referee that the operation for which he seeks, or had obtained seasonal status, is or was in fact a seasonal operation.

Accordingly, it is the conclusion of this Court that the referee's refusal to issue the subpoenas duces tecum requested by the petitioners and her preclusion of questioning on the decision making process followed by the OES did not constitute error.

### CONCLUSION

For all the reasons set forth herein, each of the orders of the Board challenged in these consolidated appeals is affirmed.

### ORDER IN 367 C.D. 1987

Now, July 29, 1988, the order of the Unemployment Compensation Board of Review, dated January 29, 1987, at No. B-255478 is hereby affirmed.

### ORDER IN 404 C.D. 1987

Now, July 29, 1988, the order of the Unemployment Compensation Board of Review, dated January 29, 1987, at No. B-255479 is hereby affirmed.

### ORDER IN 1754 C.D. 1987 AND 1764 C.D. 1987

Now, July 29, 1988, the order of the Unemployment Compensation Board of Review, dated June 30, 1987, at No. B-259400 is hereby affirmed.