550 A.2d 1041

Pennsylvania Automotive Association, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Vehicle Manufacturers, Dealers and Salespersons, Peterson, Howell and Heather, Inc., d/b/a Pennsylvania Limited Brokers, and Pennsylvania Credit Union League, Respondents.

Argued September 16, 1988, before Judges DOYLE and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Margaret M. Stuski*, with her, *C. Grainger Bowman* and *Stephen A. Moore, McNees, Wallace and Nurick*, for Petitioner.

*April L. McClaine*, Counsel, State Board of Vehicle Manufacturers, Dealers and Salespersons, with her, *Joyce McKeever*, Chief Counsel, Bureau of Professional and Occupational Affairs, and *Velma A. Boozer*, Chief

Counsel, Department of State, for respondent, State Board of Vehicle Manufacturers, Dealers and Salespersons.

*Joseph P. Green, Jr., Duffy & Green,* for respondent, Peterson, Howell & Heather, Inc.

*Francis J. Capaldo,* for respondent, Pennsylvania Credit Union League.

OPINION BY JUDGE PALLADINO, November 30, 1988:

The Pennsylvania Automotive Association (Petitioner) appeals from an adjudication and order of the State Board of Manufacturers, Dealers and Salespersons (Board) which deemed the application for a broker's license filed by Peterson, Howell and Heather, Inc., d/b/a Pennsylvania Limited Brokers (PH&H), withdrawn because the Board lacked jurisdiction over PH&H's Fleet Power Purchasing Program.

The Fleet Power Purchasing Program was the product of a consulting contract between PH&H and CMCI Corporation (CMCI), a national organization which provides marketing programs to individual credit unions. CMCI paid PH&H a consulting fee to develop a marketing program that would create a network of dealers that would agree to sell new cars to credit union members at attractive prices. PH&H developed the Fleet Power Purchasing Program and recruited dealers willing to participate in the program. The Fleet Power Purchasing Program creates a network of licensed franchised vehicle dealers willing to sell vehicles to members of credit unions, referred by credit unions, for no more than the manufacturer's invoice amount plus a 2 per cent mark-up of the invoice amount.

Dealers participating in the Fleet Power Purchasing Program enter into a standard written agreement with

PH&H (PH&H Dealer Agreement). In addition to setting the maximum sales price for a vehicle at two percent above the manufacturer's invoice amount, the PH&H Dealer Agreement provides that a dealer may not solicit the purchase of dealer installed items such as undercoating, rustproofing, paint sealant and fabric protector by the customer and may not sell the customer any financing, servicing contracts or extended warranties. The PH&H Dealer Agreement also provides that the dealer must make an offer to buy the purchaser's used vehicle, and if the offered price is not accepted, the dealer must provide storage of the purchaser's used vehicle for up to thirty days.

PH&H has no contact with individual credit union members and no agreement with any credit union or credit union league. Under the program, the purchaser deals directly with a salesman designated by the dealer and not with PH&H. PH&H is not authorized to consummate a sale on behalf of a dealer and dealers pay no fees to PH&H. PH&H audits each transaction for CMCI and receives an audit fee in addition to its consulting fee from CMCI.

In October of 1986, the Board notified PH&H that its activities violated the Board of Vehicles Act (Act), Act of December 22, 1983, P.L. 306, *as amended*, 63 P.S. §§818.1 to 818.28. In response to this notification, PH&H filed an application for a vehicle broker's license.[1] The Board informally denied PH&H's application and a formal hearing was scheduled. Petitioner and the Pennsylvania Credit Union League (PCUL) intervened. On January 22, 1988, the Board filed an adjudication and order which concluded that PH&H's activi-

---

[1] PH&H filed an application for a broker's license in good faith but took the position that the Board did not have jurisdiction over its Fleet Marketing Purchase Program.

ties were not within the Board's jurisdiction and deemed PH&H's application withdrawn. After reconsideration, the Board affirmed its findings and conclusions.

On appeal to this court,[2] Petitioner contends that the Board erred in concluding that it did not have jurisdiction over PH&H's Fleet Power Purchasing Program. PH&H and PCUL (Respondents) contend that Petitioner lacks standing to appeal from the Board's order. We will first address the standing issue.

## STANDING

Section 702 of the Administrative Agency Law provides:

> Any person aggrieved by an adjudication of a commonwealth agency, who has a *direct interest* in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa. C. S. §702 (emphasis added). Respondents contend that Petitioner lacks standing because Petitioner has failed to demonstrate a direct, immediate and substantial injury resulting from the Board's decision. However, section 702 requires only a direct interest as opposed to a direct, immediate and substantial interest. *Beers v. Unemployment Compensation Board of Review,* 118 Pa. Commonwealth Ct. 248, 546 A.2d 1260 (1988). A party has a direct interest if the adjudication "causes

---

[2] We must affirm the Board's adjudication unless we determine that Petitioner's constitutional rights have been violated, that there has been an error of law or that necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Naglich v. State Board of Motor Vehicle Manufacturers, Dealers and Salesmen,* 86 Pa. Commonwealth Ct. 478, 485 A.2d 851 (1984).

harm to an interest of his." *Id*. at 262, 546 A.2d at 1267 (1988).

Petitioner in this case is a trade association representing new and used car dealers in Pennsylvania. As an association, Petitioner has standing if it can demonstrate that any of its members have standing. *American Booksellers Ass'n, Inc. v. Rendell*, 332 Pa. Superior Ct. 537, 481 A.2d 919 (1984). Petitioner asserts that its members are in direct competition with dealers participating in PH&H's Fleet Power Purchasing Program. Petitioner also asserts that the profits of its members will be adversely affected by the operation of the program. Also, at the hearing before the Board, Petitioner presented economic testimony that the Fleet Power Purchasing Program would result in a reduced rate of return for dealers. The financial interests of a competitor may constitute an interest necessary to confer standing. *See Application of El Rancho Grande, Inc.*, 496 Pa. 496, 437 A.2d 1150 (1981). In this case Petitioner has asserted a financial interest which will be directly affected by the Board's decision. This interest is sufficient to confer standing.

Respondents also contend that Petitioner lacks standing because Petitioner's interest in protecting dealer profits is beyond the interests sought to be protected by the Act. While it is true that standing will be more readily granted where the type of interest asserted is one of the interest sought to be protected by the legislation on which the person seeking standing relies, the purpose of the underlying legislation is only a guideline in determining whether standing should be granted. *Application of El Rancho Grande*. Moreover, in this case the Board's regulations indicate that a primary purpose of the Act is to protect the general economy of the Commonwealth. *See* 49 Pa. Code §19.1.

Having determined that Petitioner has standing to appeal the Board's decision, we now turn to the issue of the Board's jurisdiction.

## JURISDICTION

Section 4 of the Act, 63 P.S. §818.4, clearly sets out the powers and duties of the Board. Section 4 provides that the Board shall have the power to "[p]rovide for and regulate the licensing of salespersons, dealers, *brokers,* manufacturers, factory branches, distributors, distributor branches, factory or distributor representatives and wholesalers. . . ." (Emphasis added.) A "broker" is defined in section 1 of the Act, 63 P.S. §818.1, as follows:

> Any person who, for a commission, compensation or other valuable consideration, engages or participates in the wholesale or retail sale in one calendar year of five or more used vehicles or any new vehicle as the *agent for the buyer or seller.* For the purposes of this definition, the broker need not have custody or control of the subject vehicle but *shall have the authority of the buyer or seller to negotiate or conduct a transaction on behalf of the buyer or seller.* This definition shall specifically include car auctions: Provided, however, That a person licensed as a broker who is solely engaged in the business of conducting a car auction shall not be required to meet the facilities requirements as noted herein. (Emphasis added.)

Petitioner contends that PH&H satisfies the statutory definition of a broker because it negotiates for the benefit of the buyer.[3] We disagree. The above definition

---

[3] Petitioner does not contend that PH&H through its Fleet Power Purchasing Program is engaging in activities which are licensable in any of the nine remaining categories which are enumerated in section 1 of the Act.

makes clear that a broker is an agent for the buyer or seller. For an agency relationship to exist there must be an agreement that one party will act on the other's behalf and be subject to the other's control. *Smalich v. Westfall,* 440 Pa. 409, 269 A.2d 476 (1970). In this case there was no such agreement. In fact, the Board specifically found that PH&H had no contact with the buyer and had no agreement with the individual credit union. Thus, we conclude that PH&H does not act as a broker for the buyer. Nor does PH&H act as a broker for the seller, as the Board specifically found that PH&H is not authorized to consummate a sale on behalf of a dealer.

Petitioner contends that even if PH&H does not satisfy the statutory definition of a broker, the Board has the power to regulate PH&H's activities and determine if those activities should be proscribed because the Act gives the Board broad regulatory power over automobile sales in Pennsylvania. We fail to see anything in the Act which gives the Board the power to regulate PH&H's activities. It is a well established principle of administrative law that "[t]he power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist." *Green v. Milk Control Commission,* 340 Pa. 1, 3, 16 A.2d 9, 9 (1940), *cert. denied,* 312 U.S. 708 (1941); *see Process Gas Consumers Group v. Pennsylvania Public Utility Commission,* 511 Pa. 88, 511 A.2d 1315 (1986); *Pennsylvania Human Relations Commission v. St. Joe Minerals Corporation,* 476 Pa. 302, 382 A.2d 731 (1978).

In this case the Act gives the Board the power to regulate the licensing of salespersons, dealers, brokers, manufacturers, factory branches, distributors, distributor branches, factory or distributor representatives and wholesalers. Petitioner's only contention is that PH&H is acting as a broker. Having concluded that PH&H is

not acting as a broker, we hold that the Board does not have jurisdiction to regulate PH&H's Fleet Power Purchasing Program.

Finally, Petitioner contends that the Board must take jurisdiction of this matter to determine whether PH&H has violated section 1 of the Sherman Antitrust Act, 15 U.S.C. §1. This argument is also without merit. Jurisdiction over claims arising under the Sherman Act is vested exclusively in the federal courts. *General Investment Co. v. Lake Shore & M. S. Ry. Co.,* 260 U.S. 261 (1922).

Accordingly, we affirm.

### ORDER

AND NOW, November 30, 1988, the order of the State Board of Vehicle Manufacturers, Dealers and Salespersons in the above-captioned matter is affirmed.

Judge MACPHAIL did not participate in the decision in this case.