**H. William DeWEESE, House Minority Leader and Member of the House Rules Committee, and Mike Veon, Democratic Whip of the House of Representatives, Petitioners,**

v.

**Honorable C. Michael WEAVER, Secretary of the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 2002.

Decided May 13, 2003.

---

John W. Morris, Philadelphia, for petitioners.

Calvin R. Koons, Harrisburg, for respondent.

Before: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Two members of the House of Representatives, H. William DeWeese, House Minority Leader, and Mike Veon, Democratic Whip (collectively Petitioners), have filed a petition for review to have certain amendments to the Judicial Code declared unconstitutional under the "single subject rule" and related provisions of the Pennsylvania Constitution, and to have enforcement of these statutory amendments enjoined. C. Michael Weaver, Secretary of the Commonwealth of Pennsylvania (Respondent), has filed preliminary objections asserting that the petition for review, in its entirety, fails to state a cause of action. Here, we consider whether Petitioners' action should be dismissed.

We begin with a review of the pleading, which relates to the manner by which the challenged provisions of the Judicial Code became law. It is axiomatic that the facts in a pleading must be deemed true in deciding whether they state a cause of action, but those "facts" relevant to Respondent's preliminary objections are matters of public record, and, for the most part, not in dispute.[1]

On October 9, 2001, the Senate introduced Senate Bill 1089, Printer's Number 1370 (SB 1089 or SB 1089, PN ___). SB 1089 proposed amendments to the DNA Detection of Sexual and Violent Offenders Act (DNA Act), Act of May 28, 1995, Sp. Sess., P.L. 1009, 35 P.S. §§ 7651–7651.1102.[2] SB 1089, PN 1370 was titled as follows:

## AN ACT

Amending the act of May 28, 1995 (1st Sp.Sess., P.L. 1009, No. 14), entitled "An act providing for DNA testing of certain

---

1. In *Pennsylvania School Boards Association, Inc. v. Commonwealth Association of School Administrators,* 569 Pa. 436, 805 A.2d 476 (2002), the Supreme Court noted that judicial notice may be taken of the Legislative Journals to track various forms of a bill.

2. The principal object of the DNA Act is the establishment of a State DNA data bank for use by law enforcement officials in criminal investigations; individuals convicted of felony sex offenses and other specified offenses are required to provide genetic samples for the DNA bank. This information is used by law enforcement authorities to determine whether a recidivist act has occurred and to assist in apprehending the wrongdoer.

offenders; establishing the State DNA Data Base and the State DNA Data Bank; further providing for duties of the Pennsylvania State Police; imposing costs on certain offenders; and establishing the DNA Detection Fund," further providing for DNA sample required upon conviction and for expungement. The amendments of SB 1089 proposed to have a genetic sample obtained from every felony sex offender, including those who had been convicted prior to the effective date of the DNA Act, at some point during incarceration.[3] The amendments also proposed to eliminate the ability of persons convicted for a felony sex offense prior to the effective date of the DNA Act to have their DNA records expunged.

The same day SB 1089 was introduced in the Senate, it was referred to the Senate Judiciary Committee and reported out of committee. After three considerations, the Senate passed SB 1089 on November 14, 2001.

On November 15, 2001, the House of Representatives received SB 1089 and referred it to the House Judiciary Committee. The House amended SB 1089 to include additional crimes within the DNA Act's definition of "felony sex offense" and "other specified offense." On December 12, 2001, the House passed its version, *i.e.*, SB 1089, PN 1625.

On that same day, SB 1089, PN 1625 was returned to the Senate and referred to the Rules and Executive Nominations Committee. The Senate concurred in the House amendments with one exception: it deleted aggravated assault from the expanded list of "other specified offenses."

On March 19, 2002, the Senate passed SB 1089, PN 1799, and it was returned to the House.

On June 4, 2002, the House inserted amendments to SB 1089 that are the subject of this controversy. These amendments, set forth in SB 1089, PN 2041, also included a new title for the bill, which now read as follows:

### AN ACT

*Amending Title 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes,* Providing for DNA Testing of Certain Offenders; Reestablishing the State DNA Data Base and the State DNA Data Bank; Further Providing for Duties of the Pennsylvania State Police; Imposing Costs on Certain Offenders; Reestablishing the DNA Detection Fund; *Further Providing for the Apportionment of Liability and Damages; Imposing Penalties; and Making a Repeal.*

SB 1089, PN 2041 (emphasis added). This remained the title of the bill until its final passage and signature by the Governor.

Section 1 of SB 1089, PN 2041 codified the DNA Act, which had previously been a stand alone, uncodified enactment;[4] the DNA Act became new Chapter 47 of the Judicial Code. 42 Pa.C.S. §§ 4701–4741. Section 2 of SB 1089, PN 2041, amended Chapter 71 of the Judicial Code, which relates to comparative negligence. Specifically, SB 1089, PN 2041 provided that in civil cases where liability for negligence is "attributed to more than one defendant," each defendant can only be held liable for

---

3. Prior to the amendment of SB 1089, persons convicted of a felony sex offense were required by the DNA Act to have a genetic sample drawn immediately upon incarceration or immediately upon adjudication of the crime.

4. The West Publishing Company's unofficial codification or compilation, known as "Purdon's statutes," placed the DNA Act within its Title 35, "Health and Safety." 35 P.S. §§ 7651.101–7651.1102.

proportional damages equal to his proportion of the total liability. 42 Pa.C.S. § 7102(b).[5]

SB 1089, PN 2041 was reported out of committee that same day, and it was passed by the House after one consideration. Upon its return to the Senate, SB 1089, PN 2041 was placed on the calendar, and on June 12, 2002, it was passed by the Senate with a technical amendment. The bill, now SB 1089, PN 2082, was sent back to the House for concurrence in the amendment.

On June 17, 2002, the House referred SB 1089, PN 2082 to the Rules Committee, which reported it out of committee that day. Later that day, the House concurred in the Senate amendment, and on June 18, 2002, SB 1089, PN 2082 was signed in the House. On June 19, 2002, the bill was signed in the Senate; later that day, SB 1089, PN 2082 was signed by the Governor to become the 57th Act of 2002 (Act 57).

On August 14, 2002, Petitioners filed this action, asserting that Act 57 violated Article III, Sections 1, 2, 3 and 4 of the Pennsylvania Constitution.[6] On September 16, 2002, Respondent filed preliminary objections in the nature of a demurrer asserting that Petitioners failed to state a cause of action upon which relief can be granted. He challenges only those claims of Petitioners asserted under Article III, Sections 1 and 3. Respondent's theory is that if Act 57 survives a challenge under Sections 1 and 3, then, necessarily, it also survives a challenge under Sections 2 and 4.[7] Thus, Respondent requests that Petitioners' entire action be dismissed.

---

**5.** Prior to the amendment, 42 Pa.C.S. § 7102(b) permitted a plaintiff to recover the total amount of damages against any of several defendants; the defendant that paid the damage award could seek contribution from the remaining defendants.

**6.** Article III Sections 1, 2, 3, and 4 of the Pennsylvania Constitution provide,

**§ 1. Passage of laws**
No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose.
**§ 2. Reference to committee; printing**
No bill shall be considered unless referred to a committee, printed for the use of the members and returned therefrom.
**§ 3. Form of bills**
No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.
**§ 4. Consideration of bills**
Every bill shall be considered on three different days in each House. All amendments made thereto shall be printed for the use of the members before the final vote is taken on the bill and before the final vote is taken, upon written request addressed to the presiding officer of either House by at least twenty-five per cent of the members elected to that House, any bill shall be read at length in that House. No bill shall become a law, unless on its final passage the vote is taken by the yeas and neas, the names of the persons voting for and against it are entered on the journal, and a majority of the members elected to each House is recorded thereon as voting in its favor.

**7.** We accept Respondent's premise that if Petitioners do not state a claim under Article III, Sections 1 and 3, then they cannot state a claim under Article III, Sections 2 and 4. *See, e.g., Pennsylvania AFL–CIO v. Commonwealth of Pennsylvania*, 683 A.2d 691, 694 n. 4 (Pa. Cmwlth.1996) (noting that violations of Article III, Sections 2 and 4 are dependent on finding a violation of Article III, Section 1 or 3); *see also Common Cause v. Commonwealth*, 668 A.2d 190, 198 (Pa.Cmwlth.1995) (stating that Article III, Sections 2 and 4 require that bills be referred to committee and considered on three different days in each house). If this Court finds that an amendment to a bill is germane to and does not change the general subject of the bill, as required by Article III Sections 1 and 3, then the bill does not have to be referred to committee and considered on three separate days. The rationale is that if the amendment does not change the bill's purpose or subject matter, then the legislature

■ Preliminary objections that result in dismissal of an action should be sustained only in cases that are free from uncertainty. *Parker v. Department of Labor and Industry,* 115 Pa.Cmwlth. 93, 540 A.2d 313 (1988). On the other hand, a statute is presumed to be constitutional and not to be declared otherwise unless it "clearly, palpably, and plainly violates the Constitution." *Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 370, 485 A.2d 732, 735 (1984). Because all doubts are to be resolved in favor of sustaining a statute, the party challenging a statute's constitutionality bears a heavy burden of persuasion. *Pennsylvania School Boards Association, Inc. v. Commonwealth Association of School Administrators,* 569 Pa. 436, 443, 805 A.2d 476, 479 (2002). This burden is particularly weighty where, as here, the challenge is not to the substance of the law but to the procedure by which it was enacted, an issue which implicates the delicate relationship between the legislative and judicial branches.[8]

■ Against these principles, we consider whether Petitioners state a claim under Article III, Sections 1 and 3 of the Pennsylvania Constitution. To sustain the Respondent's preliminary objections, we must find that the title of the final version of the bill was not deceptive.[9] Further, we must find that Chapters 47 and 71 of the Judicial Code relate to the same subject.[10] Respondent contends that the two chapters are related to the general subject of the business of the courts. Specifically, he

argues that new Chapter 47 establishes consequences for certain criminal verdicts and amended Chapter 71 establishes consequences for certain civil verdicts.

■ The heart of Petitioners' claim is that Act 57 violates Article III, Section 3, and so we consider, first, Respondent's preliminary objection to this claim. Article III, Section 3 provides that "[n]o bill shall be passed containing *more than one subject,* which shall be clearly expressed in its title . . . ." (emphasis added). Known as the "single subject rule," this constitutional mandate stands in the way of the omnibus bill that addresses so many subjects that the real purpose of the legislation is disguised in a misleading title. Article III, Section 3 also bars legislative "logrolling," which is the practice of combining several legislative proposals, not one of which could pass on its own merits, into one bill. By combining the minorities who favor one of the bill's parts, a majority is obtained on all parts. *Common Cause of Pennsylvania v. Commonwealth,* 668 A.2d 190, 197 (Pa.Cmwlth.1995).[11] The single subject rule also prevents the attachment of riders to popular bills that are certain of adoption. Such riders become law, not on their own merits, but on the strength of the bill to which they are attached. *Id.* Finally, a bill addressing a single topic is deemed more likely to obtain a considered review than one addressing many.[12]

■ For purposes of Article III, Section 3, our Supreme Court has defined "subject" as follows:

does not have to waste its time or slow down the legislative process by studying the merits of the bill a second time to enable its passage.

**8.** *See* David B. Snyder, Note, *The Rise and Fall of the Enrolled Bill Doctrine in Pennsylvania,* 60 Temp. L.Rev. 315 (1986).

**9.** Pa. Const. art. III, § 1.

**10.** Pa. Const. art. III, § 3.

**11.** *See also* Charles W. Rubendall, *The Constitution and the Consolidated Statutes,* 80 Dick. L.Rev. 118, 120–121, (1975–1976); Millard H. Ruud, *No Law Shall Embrace More Than One Subject,* 42 Minn. L.Rev. 389, 391 (1958).

**12.** Ruud, 42 Minn. L.Rev. at 391.

[t]hose things which have a "proper relation to each other," which fairly constitute parts of a scheme to accomplish a single general purpose, "relate to the same subject" or "object." And provisions which have no proper legislative relation to each other, and are not part of the same legislative scheme, may not be joined in the same act.

*Payne v. School District of Borough of Coudersport*, 168 Pa. 386, 31 A. 1072 (1895). Stated otherwise, each subject in an act must be "germane" to the other subjects in an act. *Yardley Mills Co. v. Bogardus*, 321 Pa. 581, 185 A. 218 (1936).

We cannot say that requiring DNA samples from incarcerated felony sex offenders bears a "proper relation" to joint and several liability for acts of negligence. The claim that the two subjects relate to judicial procedure is a reach. While expungement of a DNA record may arguably relate to the "business of the courts," Chapter 47's main purpose is to assist in the investigation and apprehension of criminals. The germane standard is not a high one, but Act 57 does not satisfy it.

Respondent rejoins that our holding in *Fumo v. Pennsylvania Public Utility Commission*, 719 A.2d 10 (Pa.Cmwlth. 1998) requires that we find Act 57 to satisfy the single subject rule. In *Fumo*, we found that a statute that amended the law on the regulation of taxicabs and established the deregulation of electrical utility service to satisfy the single subject rule. The statute amended two separate and existing provisions of the Public Utility Code, a codified statute with a single general purpose, *i.e.*, the regulation of public utilities. Accordingly, the amending statute was found not to violate Article III, Section 3.

The fact that the changes in substantive law effected by Act 57 were set forth as amendments to the Judicial Code [13] does not, in and of itself, satisfy the requirements of Article III, Section 3.[14] Even Respondent acknowledges that *Fumo* did not establish the absolute principle that a bill addressing two parts of a single codified statute will always satisfy Article III, Section 3. The amendments at issue in *Fumo* were to existing provisions of the Public Utility Code. Here, we deal with the first time placement of a previously stand alone statute, the DNA Act, into the Judicial Code in addition to amendments to Chapter 71 of the Judicial Code.

In short, we cannot find that Petitioners do not state a cause of action under Article

---

13. However, in most circumstances, deference should be afforded to the legislature's codification of previously enacted laws. We do not say that the DNA Act must be codified in future Title 35, Title 18 (the Crimes Code) or Title 42 (the Judicial Code). We decide only that amendments to a previously codified law do not escape the mandate of Article III, Section 3 merely because the amendments are made to a single codified law. This is particularly true where, as here, one of the amendments is a first time codification of a prior statute.

14. Article III, Section 3 expressly exempts the codification of laws from its reach, and here we deal with amendments to a consolidated statute, *i.e.*, the Judicial Code. The structural framework for codification of Pennsylvania's statutes was established by the Act of November 25, 1970, P.L. 707, No. 230, *as amended*, 1 Pa.C.S. §§ 101–103. The goals of the single subject rule, such as preventing logrolling, do not pertain where laws that have previously been enacted are simply being readopted in codified form, with revisions to the language of the prior enactments made only as needed to create a unified body of law by harmonizing conflicts, filling omissions and otherwise clarifying the existing law that goes into the code. *See* Rubendall, 80 Dick. L. Rev. at 118–146, for a thorough consideration of the consolidation process in Pennsylvania, and the difference between a consolidation, compilation and a revision.

III, Section 3. Accordingly, we overrule Respondent's preliminary objection to the Petitioners' claim under the single subject rule.

 However, we agree with Respondent that the petition for review does not state a claim under Article III, Section 1 of the Pennsylvania Constitution. Our Supreme Court has established a bright line test for such challenges. Article III, Section 1 is "to put the members of the Assembly and *others interested, on notice,* by the title of the measure submitted, so that they might vote on it with circumspection." *Scudder v. Smith,* 331 Pa. 165, 170, 200 A. 601, 604 (1938) (emphasis in original). Thus, in *Scudder,* our Supreme Court held that a substantive law, enacted as a resolution rather than a bill, violated Article III, Section 1 of the Pennsylvania Constitution by virtue of this deceptive nomenclature.

The leading case for Article III, Section 1 analysis is *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986). In that case, citizens challenged a statute raising the compensation of certain public officials on Article III, Section 1 grounds because the original bill proposed to amend the law relating to "counties of the third, fourth, fifth, sixth, seventh and eighth classes. . . ." *Id.* at 164, 507 A.2d at 325. In defending the act, the Attorney General urged a return to the pre-*Scudder* state of the law, where challenges to the procedures of a bill's enactment were considered inappropriate for judicial review. As explained by our Supreme Court,

> In regard to the passage of the law and the alleged disregard of the forms of legislation required by the constitution, we think the subject is not within the pale of judicial inquiry. So far as the duty and the consciences of the members of the legislature are involved the law is mandatory. They are bound by

their oaths to obey the constitutional mode of proceeding, and any intentional disregard is a breach of duty and a violation of their oaths. But when a law has been passed and approved and certified in due form, it is no part of the duty of the judiciary to go behind the law . . . to inquire into the observance of form in its passage.

*Kilgore v. Magee,* 85 Pa. 401, 412 (1877). Although it acknowledged the wisdom of the *Kilgore* analysis in *Consumer Party,* the Supreme Court declined to establish a general rule of judicial abstention of challenges asserted under Article III, Section 1. Nevertheless, it set a very high standard:

> Here the bill in final form, with a title that clearly stated its contents, was presented to each house for its consideration and adoption. . Under these circumstances there is no basis for sustaining a challenge under Article III, Section 1.

*Consumer Party,* 510 Pa. at 181, 507 A.2d at 335.

 Thus, all that is required to satisfy Article III, Section 1 is that the title of the bill, in its final form, not be deceptive. If the bill's title is actually deceptive or no reasonable person could have been on notice as to the bill's contents, then Article III, Section 1 is violated. *Beers v. Unemployment Compensation Board of Review,* 118 Pa.Cmwlth. 248, 546 A.2d 1260 (1988), *overruled on other grounds by Vanmetre v. Unemployment Compensation Board of Review,* 128 Pa.Cmwlth. 644, 564 A.2d 540 (1989). In *Beers,* we explained as follows:

> [S]ince the petitioners have not contended that the legislators or the public were actually deceived as to the contents of Act 30 *at the time of its passage,* it can not be concluded that Article III, Section 3 has been violated.
>
> Furthermore, because the *final form* of House Bill 1042 (1985 Session), in which

Act 30 had its genesis, had a title that clearly stated its contents and was presented to each house for its consideration and adoption, it can not be concluded that it was enacted in violation of Article III, Section 1 of the state Constitution.

*Id.* at 1272 (citations omitted) (emphasis added).

Here, Petitioners allege that the title of SB 1089, PN 2082 was not clear, but they do not allege that the title was so unclear as to be fraudulent or deceptive. Further, the final form of the bill, SB 1089, PN 2082, expressly stated in the title that the bill contained amendments to the Judicial Code, a statute broad in scope, and it specified those amendments as codifying the DNA Act and providing for "the apportionment of liability." The petition for review does not aver that this title failed to provide notice of the bill's contents to a single "reasonable person." *Beers,* 546 A.2d at 1271. However, even if the petition contained such averments, the required inference cannot be made here. The title serves as a signal not a précis of the bill's contents.[15] Thus, we hold that the petition for review fails to state a cause of action under Article III, Section 1 of the Pennsylvania Constitution.

Accordingly, Respondent's preliminary objections to the petition for review as to Article III, Section 3 are overruled but those as to Article III, Section 1 are sustained.

Judge COHN did not participate in the decision in this case.

**ORDER**

AND NOW, this 13th day of May, 2003, the Respondent's preliminary objections to the above-captioned matter are hereby overruled as to the Article III, Section 3 claim but sustained as to the Article III, Section 1 claim. The Respondent is directed to file an answer to the petition for review within 30 days.

Concurring and dissenting opinion by President Judge COLINS.

I join in the first part of the majority opinion wherein it overrules the respondent's preliminary objections under Article III, Section 3 of the Pennsylvania Constitution. I dissent insofar as it sustains preliminary objections based on Article III, Section 1.

Judges McGINLEY and SMITH–RIBNER join.

---

15. Article III, Section 1 was not intended to tyrannize legislators with pedantic and picayune standards for drafting a bill's title. *Commonwealth v. Stofchek,* 322 Pa. 513, 185 A. 840 (1936). The focus should be on the substance of the bill, not its title. The constitutional mandate is intended only to prevent fraudulent efforts to sneak legislation past un- knowing legislators or the Governor. *Id.* In short, as difficult as it may be to have a statute declared unconstitutional for failing to clear the low fence of germaneness, it is that much harder to set aside a statute for the reason that it moved through the legislative process under a deceptive title.