IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jasmine Weeks, Arnell Howard,    :
Patricia Shallick, individually and    :
on behalf of all others similarly    :
situated,    :
          Petitioners    :
    :
        v.    :   No. 409 M.D. 2019
    :   Argued: February 8, 2021
Department of Human Services of the    :
Commonwealth of Pennsylvania,    :
          Respondent    :

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
            HONORABLE MARY HANNAH LEAVITT, Judge (P)
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE LEAVITT                        FILED: May 13, 2021

Jasmine Weeks, Arnell Howard, and Patricia Shallick, individually and on behalf of all others similarly situated (collectively, Petitioners), have filed a class action to have Act 12 of 2019[1] declared unconstitutional and its enforcement enjoined. Act 12 eliminated the General Assistance cash benefit program administered by the Pennsylvania Department of Human Services (Department) but continued the General Assistance medical assistance program. It also enacted several amendments related to the provision of medical care to certain low-income individuals. Petitioners contend that Act 12 violated the "single-subject rule"[2] and the "original purpose rule"[3] in the Pennsylvania Constitution and, thus, is void and unenforceable. Before the Court are the Department's preliminary objections in the

---

[1] Act of June 28, 2019, P.L. 43, No. 2019-12 (Act 12).

[2] PA. CONST. art. III, §3.

[3] PA. CONST. art. III, §1.

nature of a demurrer requesting the dismissal of Petitioners' amended petition for review. On March 24, 2021, this Court granted the Department's preliminary objections and dismissed the petition. Thereafter, Petitioners filed an application for reargument/reconsideration asserting that the Court misapprehended the nature of Act 12. The Court granted reconsideration[4] to clarify that Act 12 pertains to the provision of medical care to certain low-income persons and correct Petitioners' misimpression of our understanding of Act 12. We grant the Department's preliminary objections and dismiss the petition after reconsideration.

## Background

On June 28, 2019, House Bill 33, Printer's Number 2182, was signed into law as Act 12. Petition for Review (Petition) ¶62. Promptly thereafter, the Department notified all persons enrolled in General Assistance that their last monthly cash benefit would be disbursed on July 31, 2019. Petition ¶70. The affected persons had received between $174 and $215 per month, depending on their county of residence. Petition ¶35.

On July 22, 2019, Petitioners filed a petition for review in this Court's original jurisdiction on behalf of themselves and the 11,844 Pennsylvanians receiving General Assistance cash benefits as of July 31, 2019. Petition ¶9. The petition for review sought (1) a declaratory judgment that Act 12 violated Article III, Sections 1 and 3 of the Pennsylvania Constitution and (2) a permanent injunction against the enforcement of those provisions of Act 12 that eliminated the General Assistance cash benefit program. Simultaneously, Petitioners filed an application for a preliminary injunction to enjoin the Department's enforcement of Sections 1, 2, and 3 of Act 12, pending disposition of the merits of the petition for review.

---

[4] The March 24, 2021, opinion and order were withdrawn.

2

On August 1, 2019, this Court denied Petitioners' application for a preliminary injunction for the stated reason that Petitioners failed to show either a clear right to relief or immediate and irreparable harm. *Weeks v. Department of Human Services* (Pa. Cmwlth., No. 409 M.D. 2019, filed August 1, 2019) (*Weeks I*). Petitioners appealed, and the Supreme Court affirmed this Court's denial of a preliminary injunction. *Weeks v. Department of Human Services*, 222 A.3d 722 (Pa. 2019) (*Weeks II*).[5] On the single-subject requirement, the Supreme Court explained:

> *[Act 12] as a whole relates to the provision of benefits pertaining to the basic necessities of life to certain low-income individuals….* [S]uch a topic is, in our view, both unifying and sufficiently narrow to fit within the single-subject rubric as that concept has been spelled out in the reported decisions of Pennsylvania appellate courts.

*Id*. at 730 (emphasis added). With regard to the original purpose requirement, the Supreme Court stated as follows:

> [House Bill] 33 originally had only three provisions, all relating in some way to Cash Assistance. The additional sections which were included in the final version of the bill all fit within the unifying topic mentioned in the above discussion pertaining to the single-subject rule.

*Id*. at 731.

Following the Supreme Court's decision, Petitioners filed an amended petition for review. This pleading repeated the same constitutional challenges presented in the original petition for review, but it updated and expanded the factual

---

[5] Then-Chief Justice Saylor wrote the majority opinion, in which Justices Baer, Todd, Donohue, Dougherty, and Mundy joined. Justice Todd filed a concurring opinion in which Justices Donohue and Dougherty joined. The concurring opinion found that Petitioners failed to establish a likelihood of success on the merits but withheld final judgment on the merits of Petitioners' constitutional claims. Justice Wecht filed a dissenting opinion.

allegations.[6]  The amended petition avers that House Bill 33 was introduced on January 4, 2019, under the title that follows:

> Amending the act of June 13, 1967 (P.L. 31, No. 21), entitled "An act to consolidate, editorially revise, and codify the public welfare laws of the Commonwealth," in public assistance, further providing for definitions, for general assistance-related categorically needy and medically needy only medical assistance programs and for the medically needy and determination of eligibility.

Amended Petition for Review (Amended Petition), Exhibit I at 1.  House Bill 33 revised the definition of "General Assistance" in the Human Services Code,[7] which referred to the cash benefit and the medical assistance programs.  Amended Petition ¶42.  House Bill 33 specified that the eligibility criteria for General Assistance would apply only to the General Assistance-related medical assistance program.  It removed the receipt of General Assistance cash benefits from the list of ways a person can be determined to be "medically needy."  *Id.*

Following House consideration of House Bill 33, the legislation was amended.  The amendments expanded the Medicaid nursing facility incentive payments for fiscal year 2019-2020; revised definitions for the Statewide Quality Care Assessment to effect a statewide tax on hospitals; and reauthorized the municipal hospital assessment for cities of the first class.  Amended Petition ¶¶46-48.  Additionally, the Bill's title was changed to state as follows:

---

[6] The amended petition: (1) eliminated a named petitioner, Vanessa Williams; (2) replaced allegations of specific harms with allegations of general harm caused by the elimination of General Assistance cash benefits; (3) expanded the description of the amendments to Act 12; (4) deleted the statements of state representatives; (5) alleged that certain revenue-raising amendments to Act 12 benefit the general public; (6) alleged that the title of the final bill is deceptive; and (7) amended the request for relief to request, more generally, declaratory and injunctive relief "to remedy the unconstitutional enactment of Act 12."  Department's Brief at 11 n.3 (citing Amended Petition).

[7] Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§101-1503.

4

An Act amending the Act of June 13, 1967 (P.L. 31, No. 21), entitled "An Act to Consolidate, Editorially Revise, and Codify the Public Welfare Laws of the Commonwealth," in public assistance, further providing for definitions, for general assistance–related categorically needy and medically needed only medical assistance programs, for the medically needy and determination of eligibility and for medical assistance payments for institutional care; in hospital assessments, further providing for definitions, for authorization, for administration, for no hold harmless, for tax exemption and for time period; and, in statewide quality care assessment, further providing for definitions.

Amended Petition, Exhibit F at 2.

On May 11, 2020, the Department filed new preliminary objections in the nature of a demurrer to the amended petition, contending that it does not state a claim under Article III, Sections 1 or 3 of the Pennsylvania Constitution. The preliminary objections raise three issues: (1) Act 12 did not violate the "single-subject" requirement in Article III, Section 3 of the Pennsylvania Constitution; (2) Act 12 did not violate the "original purpose" requirement in Article III, Section 1 of the Pennsylvania Constitution; and (3) the amended petition, if granted, would impermissibly intrude upon the legislative function.[8] The Department asks this Court to sustain its preliminary objections and dismiss the amended petition in its entirety.

For this Court to sustain preliminary objections, "it must appear with certainty that the law will permit no recovery[.]" *McCord v. Pennsylvania Gaming Control Board*, 9 A.3d 1216, 1219 (Pa. Cmwlth. 2010) (quotation omitted). Statutes are "strongly presumed to be constitutional, including the manner in which they were

_____

[8] We have reordered the constitutional issues raised by the Department to conform with the order in which the Supreme Court addressed them in *Weeks II*.

5

passed." *Commonwealth v. Neiman*, 84 A.3d 603, 611 (Pa. 2013) (quotation omitted). Stated otherwise, a statute will be held constitutional "unless it clearly, palpably, and plainly violates the Constitution." *Id.* (quotation omitted). All doubts are resolved in favor of the statute's constitutionality. *Id.* In reviewing preliminary objections, this Court assumes that all facts pled and all reasonable inferences therefrom are true. This assumption does not extend to legal conclusions asserted in the pleading. *Mazur v. Cuthbert*, 186 A.3d 490, 502 (Pa. Cmwlth. 2018).

We address the Department's preliminary objections seriately.

## Article III, Section 3 – Single-subject Rule

Petitioners assert that Act 12 covers "disparate subjects" that lack a "unifying scheme." Amended Petition at 30, ¶76. The Department demurs. It contends that Petitioners offer a myopic construction of Act 12 and an overly restrictive reading of the Constitution.

> Article III, Section 3 of the Pennsylvania Constitution states as follows:
>
> No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

PA. CONST. art. III, §3. "Known as the 'single-subject rule,' this constitutional mandate stands in the way of the omnibus bill that addresses so many subjects that the real purpose of the legislation is disguised in a misleading title." *DeWeese v. Weaver*, 824 A.2d 364, 369 (Pa. Cmwlth. 2003). Article III, Section 3 prevents "logrolling," which is "embracing in one bill several distinct matters, none of which could singly obtain the assent of the legislature, and procuring its passage by combining the minorities who favored the individual matters to form a majority that would adopt them all." *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 586

6

(Pa. 2003) (quotation omitted). The single-subject rule also prevents the attachment of riders "which could not become law on their own to popular bills that are certain to pass." *Id.*

On the other hand, the single-subject rule is not to be applied so strictly as to constrain normal legislative function. Our Court has recognized that bills evolve as they proceed through the legislative process, and not every amendment violates the single-subject rule. *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1223 (Pa. Cmwlth. 2018).

The central inquiry is whether the amendments are germane to the bill's subject as reflected in its title. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383, 395 (Pa. 2005) (*PAGE*). Stated otherwise, a bill must relate generally to a "single unifying subject." *Id*. at 396. For purposes of Article III, Section 3, the Pennsylvania Supreme Court has defined "subject" as follows:

> [t]hose things which have a "proper relation to each other," which fairly constitute parts of a scheme to accomplish a single general purpose, "relate to the same subject" or "object." And provisions which have no proper legislative relation to each other, and are not part of the same legislative scheme, may not be joined in the same act.

*DeWeese*, 824 A.2d at 369-70 (quoting *Payne v. School District of Borough of Coudersport*, 31 A. 1072 (Pa. 1895)).

The Department contends that the Pennsylvania Supreme Court's majority decision in *Weeks II* effectively disposes of Petitioners' claim that Act 12 violated the single-subject rule in the Pennsylvania Constitution. It urges this Court to adopt the Supreme Court's analysis and on that basis sustain the Department's demurrer.

7

A preliminary injunction places the parties in the position they occupied before the "conduct of the defendant commenced." *Appeal of Little Britain Township from Decision of Zoning Hearing Board of Little Britain Township, Lancaster County, Pennsylvania*, 651 A.2d 606, 610-11 (Pa. Cmwlth. 1994). A preliminary injunction maintains the *status quo* "until the merits of the controversy can be fully heard and determined," but it does not "decide the case as though on a final hearing." *Id.* at 611. Nevertheless, a critical factor in granting a preliminary injunction is a showing by the petitioner of a "reasonable likelihood of success on the merits." *Lewis v. City of Harrisburg*, 631 A.2d 807, 810 (Pa. Cmwlth. 1993).

The Supreme Court's decision in *Weeks II*, affirming our denial of Petitioners' application for a preliminary injunction, was not a decision on the merits of their request for a permanent injunction. Nevertheless, the Supreme Court's analysis is compelling and must be considered in reviewing the Department's demurrer. The question is whether the amendments to the petition have presented Petitioners' constitutional challenge to Act 12 in a way that requires a different analysis and conclusion than that reached by the Supreme Court in *Weeks II*.

The Department focuses on the Supreme Court's statement that Act 12 "as a whole *relates* to the provision of benefits pertaining to the basic necessities of life to certain low-income individuals" to support its argument that Act 12 satisfies the single-subject rule. *Weeks II*, 222 A.3d at 730 (emphasis added). Petitioners respond that Act 12 made multiple and disparate changes to the Human Services Code. Specifically, Petitioners contend that the revenue-raising amendment to Act 12 cannot possibly be germane to the other provisions in Act 12 that ended the General Assistance cash benefit program.

8

The reported decisions of Pennsylvania appellate courts have explicated the meaning and application of the single-subject rule. That body of law includes single-subject challenges that succeeded and others that failed.

*City of Philadelphia*, 838 A.2d 566, concerned an amendment to Title 53 of the Pennsylvania Consolidated Statutes, entitled "Municipalities Generally." The bill imposed a citizenship requirement for board members of a business improvement district; authorized municipalities to hold gifts in trust; repealed a provision of the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class[9] that required arbitrators in collective bargaining disputes to give substantial weight to Philadelphia's financial plan; changed the governance of the Pennsylvania Convention Center Authority; transferred authority over Philadelphia's taxis and limousines from the Public Utility Commission to the Philadelphia Parking Authority; and restricted the political activities of police officers. *Id.* at 571-73. All amendments were made to a single title of the Pennsylvania Consolidated Statutes, *i.e.*, "Municipalities Generally." In holding that the statute violated the single-subject rule, the Supreme Court reasoned that the government of the Philadelphia Convention Center was not germane to the rest of the bill because the Convention Center is an instrumentality of the Commonwealth, not a municipal body. Thus, there was "no single unifying subject to which all of the provisions of the act [were] germane," and the enactment was held to violate Article III, Section 3. *Id.* at 589.

*Pennsylvania State Association of Jury Commissioners v. Commonwealth*, 64 A.3d 611 (Pa. 2013), concerned a challenge to legislation that abolished the office of jury commissioner and provided for the auction and sale of

---

[9] Act of June 5, 1991, P.L. 9, *as amended*, 53 P.S. §§12720.101-12720.709.

surplus farm equipment. The Commonwealth argued that the unifying subject was the "powers of county commissioners." *Id*. at 615. The Supreme Court rejected this argument, holding that the auction of farm supplies and the abolition of an elected public official are matters "so far apart that there is no common focus." *Id.* at 618. It further reasoned that "powers of county commissioners" is a topic so broad that it could encompass a "limitless number of subjects." *Id.*

*Neiman*, 84 A.3d 603, concerned a challenge to legislation that established a two-year statute of limitations for asbestos claims; amended deficiency judgment procedures after the sale of real property; established the jurisdiction of county park police in counties of the third class; and amended Megan's Law.[10] The Commonwealth argued that these seemingly diverse topics all related to "civil and judicial remedies and sanctions." *Id*. at 610. The Supreme Court rejected this argument noting, again, that such a topic would be "virtually boundless" and not unifying. *Id*. at 613. It held that the legislation violated Article III, Section 3 of the Pennsylvania Constitution.

By contrast, in *PAGE*, 877 A.2d 383, the Race Horse Development and Gaming Act[11] survived an Article III challenge. That legislation included provisions that: regulated the horse-racing industry; authorized the creation of a slot-machine industry in Pennsylvania; created the Gaming Control Board and a regulatory regime therefor; provided for the distribution of licensing fees and tax revenue from casinos; created a general gaming fund for tourism development, property tax relief, and treatment for compulsive gambling; and placed exclusive jurisdiction in the Pennsylvania Supreme Court over gambling license disputes and constitutional

---

[10] Act of November 4, 2004, P.L. 1243, *formerly* 42 Pa. C.S. §§9791-9799.75.

[11] 4 Pa. C.S. §§1101-1904.

10

challenges to the statute. The Supreme Court held that all of these provisions had a nexus to the single unifying subject of gaming and its regulation and, thus, the Gaming Act did not violate Article III, Section 3.

*Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132 (Pa. 2009), concerned two amendments to the First Class City Home Rule Act.[12] The first increased the penalties for violations of the city's ordinances and the second eliminated taxpayer standing for appealing decisions of the city's zoning board of adjustment. The Pennsylvania Supreme Court acknowledged that at first glance the two amendments appeared to have little in common but concluded that there was a "single unifying subject to which all provisions to the act [were] germane," namely, Philadelphia home rule government. *Id.* at 1148 (quoting *PAGE*, 877 A.2d at 397). Further, the bill amended a single statute, *i.e.*, the Home Rule Act.

*Phantom Fireworks*, 198 A.3d 1205, concerned a challenge to the constitutionality of the Act of October 30, 2017, P.L. 672, No. 43 (Act 43), which included provisions relating to taxation, fireworks, and tobacco settlement revenue. This Court held that all of these provisions "[fell] within the single unifying subject of revenue generation." *Phantom Fireworks*, 198 A.3d at 1224. We explained that the addition of the provisions on fireworks did not destroy the overarching purpose of taxation and generating revenue, stating:

> Where the provisions added during the legislative process assist in carrying out a bill's main objective, or are otherwise "germane" to the bill's subject as reflected in the title, the requirements of Article III, Section 3 are met.

*Phantom Fireworks*, 198 A.3d at 1224 (quoting *PAGE*, 877 A.2d at 395). While the provisions regulating fireworks did not directly relate to taxation, those provisions

---

[12] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§13101-13157.

11

"assist[ed] in carrying out" Act 43's "main objective," which was to generate revenue from an expanded and modernized fireworks market. *Phantom Fireworks*, 198 A.3d at 1224.

With this precedent in mind, we turn to Act 12, which amended Article IV and Article VIII-E of the Human Services Code. The Article IV amendment ended the General Assistance cash benefit program but continued the medical assistance program in a revised form. The Article VIII-E amendments will generate "additional revenues for the purpose of assuring that medical assistance recipients have access to hospital and other health care services[.]" Section 802-E of the Human Services Code, added by the Act of July 4, 2008, P.L. 557, No. 44, 62 P.S. §802-E. Petitioners argue that this hospital assessment, a revenue raising provision, is completely different from the elimination of the General Assistance cash benefit program. In support, they point to *Washington v. Department of Public Welfare*, 188 A.3d 1135 (Pa. 2018).

*Washington* concerned Act 12's legislative predecessor, Act 80 of 2012, which was enacted to eliminate the General Assistance cash benefit program and to reauthorize a levy on nursing homes. The petitioners asserted that Act 80 violated Article III, Section 4 of the Pennsylvania Constitution,[13] which requires a

---

[13] It states:

> Every bill shall be considered on three different days in each House. All amendments made thereto shall be printed for the use of the members before the final vote is taken on the bill and before the final vote is taken, upon written request addressed to the presiding officer of either House by at least twenty-five per cent of the members elected to that House, any bill shall be read at length in that House. No bill shall become a law, unless on its final passage the vote is taken by yeas and nays, the names of the persons voting for and against it are entered on the journal, and a majority of the members elected to each House is recorded thereon as voting in its favor.

PA. CONST. art. III, §4.

bill to be considered on three separate days in each House, as well as Article III, Sections 1 and 3. Our Supreme Court held that Act 80 violated Article III, Section 4 and, thus, did not address whether the Act also violated other Article III provisions of the Pennsylvania Constitution. *Washington*, 188 A.3d at 1139 n.5. The Supreme Court, nevertheless, observed as follows:

> *the nursing home assessment program ... is solely a revenue raising tax to provide medical assistance benefits* for individuals in nursing homes, and, *consequently, is unlike the other provisions of Act 80 which, instead, are focused on such disparate topics* as: establishing criteria for custodianship of dependent children; authorizing and setting eligibility requirements for the disbursement of money for financial assistance to adoptive parents and custodians of dependent children, specifying, for the first time, a procedure in which money appropriated annually for six human service programs – each of which addresses a different human service need – must be accounted for, aggregated and spent by counties; terminating further spending on cash general assistance; and imposing new work requirements and penalty provisions for recipients of medical assistance.

*Id.* at 1154 n.36.

This discussion does not inform our analysis in the case *sub judice* for three reasons. First, the topics in Act 12 are related, not "disparate." Second, the above language from *Washington* is *obiter dictum.* Third, there is no principle, as Petitioners presume, that all revenue raising statutes must be enacted in a bill that relates exclusively to revenue.[14] This is an overbroad understanding of the above-quoted discussion from *Washington*, 188 A.3d 1135.

---

[14] At argument, counsel for the Department argued that bills containing both revenue generating and non-revenue generating provisions have withstood Article III, Section 3 challenges. Specifically, *Commonwealth ex rel. Bell v. Powell*, 94 A. 746 (Pa. 1915) (disposition of license fees collected was germane to the purpose of the entire act), and *Phantom Fireworks*, 198 A.3d 1205.

13

Act 12 amends a single title of the consolidated statutes, a fact which does not automatically fulfill the requirements of Article III, Section 3. *Neiman*, 84 A.3d at 612. As explained in *City of Philadelphia*, 838 A.2d at 589, Title 53 of the Pennsylvania Consolidated Statutes, "Municipalities Generally," did not provide the "unifying" theme required by the single-subject rule. However, the Department does not contend that Act 12 satisfies the single-subject rule because it amends a single title, *i.e.*, the Human Services Code. Rather, Act 12 pertains to the provision of health care assistance to certain low-income persons and the eligibility criteria therefor. This subject is not "limitless," as was the problem in *Neiman*, 84 A.3d at 612. As in *Spahn*, 977 A.2d 1132, the topics in Act 12 are all germane to the provision of benefits pertaining to the basic necessities of life to certain low-income individuals. As in *PAGE*, 877 A.2d 383, Act 12 grew in length from its original text, but it did not deviate from the unifying subject, *i.e.*, providing services to certain low-income individuals.

The Department argues that *Christ the King Manor v. Department of Public Welfare*, 911 A.2d 624 (Pa. Cmwlth. 2006), *aff'd*, 951 A.2d 255 (Pa. 2008), is dispositive. We agree.

In *Christ the King Manor*, the original bill was 23 lines in length and pertained to nursing home inspections. The final bill included the original text and added 24 other provisions, growing to 1,000 lines of text. This Court held that the statute did not violate the single-subject rule, given its single unifying subject, *i.e.*, the regulation of publicly funded health care services. Likewise, here, the final version of House Bill 33 retained the original text with additions relating to the single unifying subject, *i.e.*, the provision of General Assistance to low-income individuals.

14

As the Supreme Court has stated, the diverse provisions in Act 12 "as a whole" pertain to the provision of "basic necessities of life to certain low-income individuals." *Weeks II*, 222 A.3d at 730. The form and nature of the assistance varies, but the topic is "sufficiently narrow to fit within the single-subject rubric ...." *Id.* We reject Petitioners' contention that because some of the provisions raise revenue for this assistance, Act 12 violates Article III, Section 3 of the Pennsylvania Constitution. We sustain the Department's preliminary objection to Count I of the amended petition.

### Article III, Section 1 – Original Purpose

Count II of Petitioners' amended petition asserts a claim under Article III, Section 1 of the Pennsylvania Constitution, which states as follows:

> No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose.

PA. CONST. art. III, §1. The Department demurs to Count II, explaining that the original purpose of House Bill 33 was broad enough to encompass the bill's amendments.

Article III, Section 1 halted the "practice of adding, at various stages of the legislative process, provisions unrelated to a bill's original purpose." *Phantom Fireworks*, 198 A.3d at 1221 (quotation omitted). The Pennsylvania Supreme Court has established a two-prong inquiry for determining whether legislation violates this rule. First, the court compares the final purpose of the legislation to its original purpose to determine whether there has been an alteration. Second, the court must consider whether, in its final form, the title and contents of the bill are deceptive. *PAGE*, 877 A.2d at 408-09. The Supreme Court has explained as follows:

15

Regarding the determination of the original purpose of the legislation, we recognize the realities of the legislative process which can involve significant changes to legislation in the hopes of consensus, and the "expectation" that legislation will be transformed during the enactment process. Furthermore, our Court is loathe to substitute our judgment for that of the legislative branch under the pretense of determining whether an unconstitutional change in purpose of a piece of legislation has occurred during the course of its enactment. For these reasons, we believe that *the original purpose must be viewed in reasonably broad terms*.

… Given this approach of considering a reasonably broad original purpose, the General Assembly is given full opportunity to amend and even expand a bill, and not run afoul of the constitutional prohibition on an alteration or amendment that changes its original purpose. The original purpose is then compared to the final purpose and a determination is made as to whether an unconstitutional alteration or amendment, on its passage through either house, has taken place so as to change its original purpose.

*Id.* at 409 (emphasis added) (internal quotations omitted).

Petitioners argue that by final passage, Act 12 had acquired a purpose different from the original bill, which made the final title deceptive. The original purpose of House Bill 33 was the elimination of the General Assistance cash benefit program. By final passage, the bill had been amended to address revenue. The final bill reauthorized the Philadelphia hospital assessment; revised the definition of taxable net revenue; changed the permissible use of remitted federal funds; reauthorized and increased the funding for nursing facility day-one incentives; and revised the definition of taxable net revenue for the statewide quality care hospital assessment. Petitioners' Brief at 21. Petitioners argue that the bill's title is deceptive because it "does not state that it ends General Assistance cash benefits." Petitioners' Brief at 28.

16

The Department counters that the original purpose of House Bill 33 remained the same from inception to final passage. The bill was amended and expanded, but all amendments related to the original purpose of providing health care services to certain low-income persons.

In *PAGE*, 877 A.2d 383, the original bill authorized criminal background checks and fingerprinting of persons employed in the horse-racing industry. The final bill, *inter alia*, legalized a variety of gambling activities, including slot machines and the establishment of casinos. The Pennsylvania Supreme Court determined that both the original and final version of the bill related to the regulation of gambling. A similar conclusion was reached in *City of Philadelphia v. Rendell*, 888 A.2d 922 (Pa. Cmwlth. 2005). There, the original bill revised residency requirements for parking authority members; clarified police officers' voting rights; and authorized municipalities to remove fluoride from their drinking water. The final bill required the Philadelphia Parking Authority to continue to enforce on-street parking regulations and directed parking revenues to the Philadelphia School District. It deleted the provisions about police officers' voting rights and the removal of fluoride from municipal water supplies. This Court concluded that the original and final versions of the bill served the reasonably broad purpose of regulating the Philadelphia Parking Authority.

Viewed in reasonably broad terms, the original purpose of House Bill 33 was to amend the Human Services Code's provisions on medical assistance to low-income individuals. Notably, "neither the volume of the additions to the original bill nor the expansions of the subject matter's parameters will give rise to a violation of Article III, Section 1, provided the original and final versions fall under the same broad, general subject area." *Phantom Fireworks*, 198 A.3d at 1223. Each

17

amendment, even the elimination of the General Assistance cash benefit program, pertained to the provision of medical assistance to certain low-income persons.

This leaves Petitioners' claim that the final title of the bill was deceptive because it did not put "reasonable persons on notice of the subject of the bill." *PAGE*, 877 A.2d at 409. The final title for Act 12, House Bill 33, Printer's Number 2182, states:

> An Act amending the Act of June 13, 1967 (P.L. 31, No. 21), entitled "An Act to Consolidate, Editorially Revise, and Codify the Public Welfare Laws of the Commonwealth," in public assistance, *further providing for definitions, for general assistance–related categorically needy and medically needy only medical assistance programs*, for the medically needy and assistance programs, for the medically needy and determination of eligibility and for medical assistance payments for institutional care; in hospital assessments, further providing for definitions, for authorization, for administration, for no hold harmless, for tax exemption and for time period; and, in statewide quality care assessment, further providing for definitions.

H.B. 33, 2019 Leg., Reg. Sess. (Pa. 2019) (emphasis added). Petitioners argue that this title is deceptive because it did not explicitly state that "providing for definitions for general assistance" meant the elimination of the cash benefit program. The Department contends that the language in the title is sufficient to put reasonable persons on notice of the topics addressed by House Bill 33 and is in no way deceptive.

In support, the Department contrasts Act 12 from the act invalidated in *Washington*, 188 A.3d 1135. In *Washington*, the original bill was "gutted" and its "hollow shell" filled with new and varied provisions that could not be related to the bill's original purpose. *Id*. at 1150. Further, the elimination of the General Assistance cash benefit program was "hidden" in a slew of amendments to the

18

original bill. By contrast, in Act 12, the elimination of this program was present in the original bill. We agree.

The original title of House Bill 33 put legislators on notice that the bill pertained to the provision of medical services to "categorically needy individuals." Importantly, "[t]he title serves as a signal not a précis of the bill's contents." *DeWeese*, 824 A.2d at 372. As we have explained,

> Article III, Section 1 was not intended to tyrannize legislators with pedantic and picayune standards for drafting a bill's title. *Commonwealth v. Stofchek*, … 185 A. 840 ([Pa.] 1936)…. The constitutional mandate is intended only to prevent fraudulent efforts to sneak legislation past unknowing legislators or the Governor. *Id.* In short, as difficult as it may be to have a statute declared unconstitutional for failing to clear the low fence of germaneness, it is that much harder to set aside a statute for the reason that it moved through the legislative process under a deceptive title.

*DeWeese*, 824 A.2d at 372 n.15. The title of House Bill 33 did not have to identify the language that would be stricken from the Human Services Code in order to satisfy Article III, Section 1. Petitioners have cited no authority for their view that deletions from a statute must be recited in the title of the bill. The fact that the legislature could have chosen more precise language or used meaningful punctuation in the language in the title of House Bill 33 does not demonstrate deception.

The amendments to House Bill 33 did not change the original purpose of the bill, and its title did not deceive. The amended petition for review does not state a claim under Article III, Section 1 of the Pennsylvania Constitution, and the Department's preliminary objection to Count II is sustained.[15]

---

[15] Due to this disposition, we need not address the Department's third argument related to whether Act 12's invalidation would stifle the legislative function.

19

## Conclusion

Accordingly, after reconsideration, we conclude that the amended petition for review does not state a claim under Article III, Sections 1 or 3 of the Pennsylvania Constitution. Therefore, we sustain the Department's preliminary objections and dismiss the amended petition for review.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Crompton did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jasmine Weeks, Arnell Howard,     :
Patricia Shallick, individually and  :
on behalf of all others similarly    :
situated,                                :
            Petitioners      :
                                 :
          v.                   :    No. 409 M.D. 2019
                                 :
Department of Human Services of the  :
Commonwealth of Pennsylvania,    :
            Respondent    :

# **O R D E R**

AND NOW, this 13th day of May, 2021, the preliminary objections of Respondent are SUSTAINED, and Petitioners' amended petition for review is DISMISSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita